## THE STATE vs. NETT.

*November 16 — November 30, 1880.*

CRIMINAL LAW AND PRACTICE. *Prosecution for murder: what facts may be shown in mitigation, etc.*

In a prosecution for murder in the first degree, under the statute, where it appeared that the fatal blow was inflicted with a pocket knife, and that the deceased made the first assault: *Held*, that it was error to reject evidence offered by defendant to show that deceased was a man of great physical strength, and was "a desperate, fighting, ruffianly man," and that defendant had knowledge of these facts. *Brucker v. The State*, 19 Wis., 539, distinguished.

The State vs. Nett.

REPORTED from the Circuit Court for *Fond du Lac* County.

The defendant having been convicted of murder in the first degree, the presiding judge reported the cause to this court, pursuant to the statute, for the determination of certain questions of law which arose upon the trial.

For the appellant there was a brief by *C. A. & A. B. Eldredge*, and oral argument by *C. A. Eldredge*.

*H. W. Chynoweth*, Assistant Attorney General, for the state.

COLE, C. J. The defendant was put upon trial in the circuit court of Fond du Lac county, in November, 1879, charged with the crime of murder in the first degree under the statute. The person killed was one Jacob Litzen, a man about twenty-seven years of age. Some reference to the circumstances attending the killing becomes necessary in order to understand the bearing of the question which will be considered as regards the defense. The testimony on the part of the prosecution and defense was quite conflicting as to what was actually said and done by the parties just before and at the time the fatal blow was given. It is neither important nor would it be proper to dwell upon these discrepancies now, nor to indicate, except in the most general way, the facts which the testimony tended to establish. It appears that the defendant, who was about thirty-five years of age when the unfortunate occurrence took place, and his brother Hubert, who was a year and a half older, were, on the evening of the general election, November 10, 1878, at the saloon of one Bourgeoise, in the village of Calvary, in said county. At about 9 o'clock Hubert engaged in a friendly conversation with Matt. Litzen, a brother of the deceased, and during the conversation mentioned the fact that the deceased had previously whipped him at the saloon of one Bean in the village, and charged that the injuries which were then inflicted were inflicted with metal knuckles. At this remark the deceased, as to whose presence before the testimony

is silent, took part in the conversation, and denied that he had used such knuckles in his fight with Hubert, and said that the injuries which he had inflicted were caused by his fists alone, and that he was able to repeat the operation, or words of similar import. Thereupon an angry conversation ensued between the deceased and the Nett brothers, in which some offensive language was used on both sides. Some remark was made by the defendant about Litzen's father. Finally, the defendant said to Litzen, " We knew your father; he was a liar, and you are his son." The deceased was greatly enraged at this remark, and threateningly insisted that the defendant should " take back that word." About this time one Joseph Wagner interfered, and endeavored to restore quiet and good feeling between the parties by offering to treat, which he did do, and the parties shook hands.

The testimony tends to show that this reconciliation was of short continuance; that angry words soon passed between the parties; and that the deceased challenged or invited the Nett brothers to go out of doors and have a fight. But Wagner again interfered, treated, and restored quiet. Soon the Netts went out, leaving deceased in Bourgeoise's saloon talking with another party. It seems the parties soon after met in Bean's saloon, where the quarrel was renewed, Litzen still demanding of one or both the Netts that the offensive language concerning his father should be withdrawn. In a short time the Netts went out of the door onto the platform, with the apparent intention of going home. Litzen either went out with or closely followed them. As to what occurred outside, the testimony is quite conflicting; but there is undeniable evidence which tends to show that Litzen was quite angry, and made an assault upon Hubert, pushed him from the platform, and attempted to kick him as he was going down the steps. He then turned and advanced upon the defendant in a threatening manner, saying, "Now you go, too;" " If you do not take back that word, I will pound your head,"—using an oath and other

The State vs. Nett.

threats of personal violence, which propriety will not allow us to repeat. At this time, or just before, he said to the by-standers, "Get out of the way; I am enough for both of them." On coming up to the defendant, he put his left hand on defendant's shoulder threateningly. Thereupon the defendant stepped back a step or two, jumped from the platform, and as he did so struck back with his right hand, stabbing the deceased in the right groin with a pocket-knife which he held, inflicting a wound about an inch in length and an inch and a quarter deep, which severed the femoral artery, causing death in a short time. It is proper to say that the evidence shows that all the parties had been drinking more or less; and that the deceased was quarrelsome and disposed to fight, while the Netts seem rather to shun one.

These are the more material, though perhaps not all, the circumstances attending the homicide as disclosed in the evidence.

On the trial, the defendant offered to prove what kind of a man the deceased was as regards physical strength; offered to show that he was known to be a desperate, fighting, ruffianly man, ready to fight on the slightest occasion; that he was called the bully of the neighborhood where he lived; and that the defendant had knowledge of all these facts at the time of the affray. The testimony was objected to on the part of the state, and excluded. One exception relied on for a reversal of the judgment, and the only one we shall consider, is as to the correctness of this ruling of the circuit court rejecting the offered testimony. On the part of the defendant it is insisted that these matters were sufficiently a part of the *res gestæ* to be admissible. It is said that they were explanatory of the state of mind under which the defendant acted, and had an important bearing upon the question whether he had reasonable ground to apprehend great personal injury when he was assaulted by the deceased. Counsel claims that it is contrary to all human experience and conduct, where one man is assaulted by another, not to take into consideration the superior physical

power, the brutal, ruffianly character, of the assaulting party in order to determine the danger in which the assaulted party is placed.   Therefore, he says, under the special circumstances of this case, the proposed testimony was important and material for the purpose of ascertaining whether the defendant had reason to believe, and did believe, that the deceased would inflict some enormous bodily injury upon him unless he repelled the attack in the way he did.   It seems to us there is very great force and reason in this argument, in view of the circumstances attending the homicide.   The evidence certainly might throw light upon, or tend to explain, the intent and act of the defendant in using his knife in self-defense, and might possibly mitigate the crime in the estimation of the jury.

We are aware that there is some conflict of authority upon the point, but we shall not go over the cases.   Mr. Wharton, in his work on Criminal Law, § 641, has referred to these decisions in his notes to the text, and makes some very just and discriminating remarks upon the subject.   He says: "The conflict between the decisions on this point arises largely from the variation of stand-point.   Suppose that the defendant should simply ask to prove that the deceased was ferocious and desperate, as a ground of justification, the answer would be clear, 'No one has a right to take the law in his own hands and act as a sort of vigilance committee to clear society of dangerous persons.'   But, on the other hand, suppose the offer to be, not justification, but excuse on the ground of self-defense, or mitigation of the grade of guilt.   If, in such case, it be proved that the defendant was actually attacked, and if evidence should be then tendered that the deceased was a man of ferocious temper, of malignant passions, and of overpowering strength; and if it be, in addition, offered to be proved that the defendant had notice of these characteristics of the deceased, — then the better opinion is that the evidence is admissible.   There would be no question in such a case about the right to prove that the deceased was armed with gun or

sword; why not that he was armed with enormous bodily strength and desperate rage?"

It seems to us there is good sense and much reason in these remarks of the learned author. For surely, where an assault is made by a man of great physical strength, who is known or reputed to be of a brutal, vindictive disposition, upon one greatly his inferior in power, the latter may be induced to resort to means to protect himself from violence, which he would not think of using in an ordinary attack under more equal conditions. The instinct of self-defense is strong, and one may use a knife under such circumstances to protect himself from great harm, without any murderous intent. But it is suggested that the circuit court excluded the proposed evidence under the decision of *Brucker v. The State*, 19 Wis., 539. In that case the defendant offered to prove that the deceased was a man of a vicious temper, nature and disposition, but the testimony was objected to and excluded. In considering the correctness of this ruling, Chief Justice Dixon says: "If such evidence were admitted on behalf of the prisoner, it would be competent for the state to show that the deceased was of a mild and peaceable character. Such evidence is too remote and uncertain to have any legitimate bearing upon the question in issue. The provocation under which the defendant acted must be judged by the *res gestæ*, and the evidence must be confined to the facts and circumstances attending the assault upon the defendant."

This case is not very fully reported, or rather the facts attending the homicide do not appear; nor do such facts appear in the original bill of exceptions on file. But when the case was first here (16 Wis., 334), the evidence in reference to the homicide was fully stated. Probably the testimony was substantially the same on the second trial, when the proposed evidence was excluded. Assuming it to be so, the proposed testimony was doubtless properly rejected, for the circumstances do not raise a question as to whether the defendant

acted in self-defense, or had any ground for believing himself in danger of bodily harm. It appears that the deceased and the defendant were neighbors, between whom a friendly feeling existed. On the afternoon of the day of the homicide they met at the house of the defendant, and, together with another man, put a barrel of whisky into the cellar. The barrel was tapped, and all three commenced drinking together. This drinking was kept up for a couple of hours, when the stranger went away, leaving the deceased and defendant alone, still drinking together. After a time, the sister of the defendant, who was at work in the garden a short distance away, upon hearing a noise, went to the room where the parties were, and found them lying on the floor struggling and fighting. They were both in a state of beastly intoxication, probably too drunk to stand up. The sister went away to call their wives, and returned in a short time, when she found the deceased lying on the floor, bleeding from a wound on the side of his head inflicted by an ax. But which party made the assault does not appear; nor is there any ground for presuming that the defendant acted in self-defense in what he did. It was a drunken, brutal fight, where either party could have escaped from the other and got beyond the reach of danger had he been so disposed. There does not seem to have been any necessity whatever for the defendant to use an ax for his protection, nor was there any ground for his believing he had not the ability to defend himself in the drunken struggle without recourse to that weapon.

The case, in all of its facts, is clearly distinguishable from the one under consideration, where possibly the jury might have found, had all the evidence been admitted, that the deceased was so much superior in strength, so brutal and vindictive in disposition, that the defendant might reasonably have supposed that he could only protect himself from great bodily harm by the use of his knife in defense. And it is obvious that, under our statute, it had an important bearing upon the

The State vs. Nett.

grade of crime with which the defendant was charged and might be convicted. The presumption arising from the character of the weapon used is not conclusive as to the intent, and it seems to us it was proper for the jury to consider, in determining the grade of guilt, whether the deceased, who made the first assault, was a man of powerful strength, of a violent and brutal temper, and the defendant a much weaker person, of a timid disposition, who believed it was necessary to resort to the use of a knife in order to prevent his assailant from doing him some great bodily injury. In that view, of course, it was proper for the proposed testimony to come before the jury for their consideration.

Quite a number of exceptions were taken to the charge of the court, in which the jury were instructed as to what constituted the different degrees of murder and manslaughter under our statute. Inasmuch as there must be a new trial, on account of the rejection of the testimony already alluded to, we will not consider the charge. On another trial the evidence may be different, and a charge applicable to the testimony will necessarily be changed so as to apply to the facts of the case. We think the court should have granted a new trial, and that the exception taken to the overruling of the motion for a new trial, which was allowed, must be sustained. The judgment of the circuit court must therefore be reversed, and the cause remanded with directions to grant a new trial herein.

The warden of the state prison will surrender the defendant to the sheriff of Fond du Lac county, who will hold him in custody until he shall be discharged, or his custody changed by due course of law.

*By the Court.*—So ordered.