# HANEY LIDDELL v. STATE.

No. A-3334—Opinion Filed Nov. 12, 1920.

(193 Pac. 52.)

(Syllabus.)

1. **JURY—Officer Summoning Venire to be Qualified.** It is essential to the fair and impartial administration of justice that an open or special venire of jurors should be summoned by an officer who is not disqualified by reason of interest, bias, or prejudice.

2. **SAME—Disqualification of Sheriff Who is State Witness.** Section 5848, Revised Laws 1910, authorizes a challenge to the panel of an open or special venire of jurors on account of the bias of the officer who summoned such jury, upon any ground which would be good ground of challenge to a juror. Held, that where the sheriff who serves an open or special venire of jurors is a material witness for the state, and a challenge to the panel of such open or special venire is interposed by defendant on such ground, it is reversible and prejudicial error for the trial court to overrule such challenge in a cause where a substantial defense is made to the charge.

3. **HOMICIDE—Dying Declaration—Admissibility.** Statements of material facts concerning the cause and circumstances of the

homicide, made by the victim under the solemn conviction of impending death, are properly admitted as a dying declaration.

4.     **SAME—Evidence to Discredit Declaration.** A dying declaration may be discredited by showing that the declarant had been convicted of a felony or other crime involving moral turpitude.

5.     **EVIDENCE—Transcript of Testimony on Examining Trial.** Upon proper proof of a sufficient predicate therefor, the transcript of the testimony of a witness given in the examining trial may be read in evidence at the trial

6.     **HOMICIDE—Evidence of Threats by Deceased—Instruction.** An instruction, in substance that "proof of communicated and uncommunicated threats could not be considered as justifying the killing on the part of defendant, unless the threats themselves were accompanied by some overt act or demonstration on the part of deceased," is disapproved. The court should have instructed that neither communicated nor uncommunicated threats would tend to mitigate or justify a homicide, unless at the time of the killing deceased made some demonstration or overt act towards defendant which evidenced an intention to carry such threats into immediate execution, because in a self-defense case the jury is not limited in the consideration of proof of threats only to such threats as were themselves accompanied by some overt act or demonstration of hostility, but the jury may consider both communicated and uncommunicated threats, which are made by deceased against defendant to other parties for the purpose of showing the condition of deceased's mind with reference to his feeling towards defendant, and also for the purpose of determining who was the probable aggressor in the difficulty.

*Appeal from District Court, Love County;*

*W. F. Freeman, Judge.*

Haney Liddell was convicted of the crime of manslaughter in the first degree, and sentenced to serve a term of four years' imprisonment in the state penitentiary, and he appeals. Reversed and remanded.

*Graham & Logsdon, A. E. Waldon,* and *G. H. Culp,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

MATSON, J. This is an appeal from the district court of Love county, wherein Haney Liddell was convicted of the crime of manslaughter in the first degree, and sentenced to serve a term of four years in the state penitentiary, for the killing of one T. M. Boyd, which occurred in the town of Thackerville, in said county, on or about the 25th day of April, 1917. In view of the disposition made of this appeal, we deem it unnecessary to narrate the facts and circumstances surrounding the commission of this alleged homicide.

The first error assigned as ground for reversal is the alleged erroneous action of the trial court in overruling the motion of defendant to quash the special venire of jurors summoned and returned for jury service by F. N. Smith, the sheriff of Love county, Okla., who was then and there a material witness for the state in the trial of this cause, and whose name as such witness was indorsed on the information. The record bearing upon this assignment is substantially as follows:

On the 5th day of November, 1917, the trial court made an order directing the sheriff of Love county to summon in this cause a special venire of 40 men to be and appear before the court on November 13, 1917, at the hour of 9 o'clock a. m., for the reason that the regular venire of jurors drawn for that term was insufficient for the purpose of obtaining a jury in this cause. Thereafter, on the 13th of November, 1917, this cause came on regularly for trial, with all the necessary parties present, and after both sides had announced ready for trial, the selection of the jury to try the cause was begun, and after the regular panel of

jurors had been exhausted, and before the special venire of 40 men summoned by the sheriff had been sworn, counsel for defendant interposed a motion in writing to quash said special venire upon two grounds:    (1) Because said special venire was summoned by F. N. Smith, sheriff of Love county; the said F. N. Smith being a material witness for the state in said cause, and biased and prejudiced against defendant.    (2) Because the said venire was not drawn from the body of the country; the said motion being duly verified by the oath of defendant.   Counsel for the state filed an answer to said motion, which was in substance as follows:    (1) The state of Oklahoma admits that F. N. Smith is the sheriff of said county. and is a witness for the state, and did serve said process, as is alleged in said motion.    (2) The state denies each and every other allegation contained in said motion; the said answer being duly verified by the county attorney of Love county.   Whereupon, the trial court, after considering the motion and answer thereto, overruled the said motion, to which action of the trial court counsel for defendant then and there excepted.   Thereupon the special venire of 40 men summoned by the sheriff were duly sworn, and counsel for defendant further objected to the calling of any member of the special venire for jury service in the cause for the same reasons and objections urged as grounds in the motion to quash the panel, which general objection to each of said jurors was overruled by the court, to which action counsel for defendant excepted.   Thereupon the selection of a jury to try said cause was proceeded with, and 9 members of the said special venire served by the sheriff became jurors and sat in the trial of the cause.

The question here presented is not one of first impres-

sion in this court. In the case of *Koontz v. State,* 10 Okla. Cr. 553, 139 Pac. 842, Ann. Cas. 1916A 689, it is held:

"It is essential to the fair and impartial administration of justice that an open or special venire should be summoned by an officer who is not disqualified by reason of interest, bias, or prejudice."

Section 5848, Revised Laws 1910, provides:

"When the panel is formed from persons whose names are not drawn as jurors, a challenge may be taken to the panel on account of any bias of the officer who summoned them, which would be good ground of challenge to a juror. Such challenge must be made in the same form, and determined in the same manner as if made to a juror."

In the *Koontz Case* construing section 5848, it is said:

"The language of the statute is so plain that no room is left for interpretation. It authorizes a challenge to the panel, on account of the bias of the officer who summoned a jury on an open or special venire, upon what would be good ground of challenge to a juror for bias. If, then, a challenge for cause would have been sustained against a person called as a juror because he was a material witness for the state, a challenge would also lie upon the same ground to a panel summoned by him."

We think it not necessary to support with the citation of authority the proposition that, if a juror was called to serve in the trial of a criminal case, who was challenged by defendant upon the ground that he was a material witness for the state in the prosecution, whose name was indorsed upon the indictment or information, and that fact should be admitted by the county attorney, and the challenge to such a juror should be overruled, over the exception of defendant's counsel, and said person should serve as a juror in the trial of the cause, the action of the trial court in overruling the challenge and permitting the said

juror to serve under such circumstances would be clearly prejudicial to the substantial rights of defendant, and such action of the trial court would be reversible error, and not harmless in any cause where a substantial defense was interposed to the charge. It is absolutely inconsistent with the administration of justice that a jury composed of witnesses against a defendant can render a fair and impartial verdict. The impartiality of the jury goes to the very foundation of the accused's liberty. Without an impartial jury, the accused cannot be accorded that fair trial guaranteed to him by the Constitution and laws of this state. It requires the unanimous consent of the jury to return a verdict in a felony cause, and if the trial court should permit a witness for the state to sit in the trial of one charged with a felony there could, under such circumstances, be no fair and impartial trial, because an impartial jury is not had by 11 impartial men and 1 shown to be prejudiced against the defendant's cause by reason of knowledge of material facts against him. It follows, therefore, that if a witness for the state may not serve as a juror, when challenged by defendant, such a witness, by reason of the statute above set out, cannot serve a special or open venire of jurors to serve in the trial of a criminal cause in which he is a witness, and that, when such fact is made to appear to the trial court upon a challenge to the panel of an open or special venire, it would be a denial of a statutory right and safeguard for the trial court to overrule such challenge.

It is apparent that in the service of an open or special venire the officer would have the power to exercise his judgment and discretion in the service and summoning of such jurors, and the fact that the officer might exercise such power to the detriment of defendant is a sufficient reason for the enactment of section 5848, *supra*. Under such stat-

ute, witness for the state may not serve an open or special venire of jurors even though he be the sheriff of the county, and a special or open venire served by such a disqualified officer should be quashed upon proper motion. Likewise should a special or open venire served by a witness for defendant be quashed upon proper motion by the state. This has become the established practice in this jurisdiction since the rule was first announced in the case of *Koontz v. State, supra;* the opinion in that case having been published long prior to the time of the trial of this cause. The doctrine established in the *Koontz Case* has been adhered to in the recent case of *Shepherd v. State,* 17 Okla. Cr. 630, 192 Pac. 235, and in the opinion of this court, it is essential to the fair and impartial administration of justice that an open or special venire of jurors must be summoned by one who is not a witness against the party interposing the challenge to such a panel, and where a substantial defense is made to the charge, as was done in this case, it is reversible and prejudicial error to overrule a challenge by defendant to the panel of an open or special venire served by an officer or person who is a witness for the state.

In this case it was admitted in the answer to the motion to quash the panel that the sheriff who served the same was a witness for the state, and the record shows that the said officer's name was indorsed upon the information filed in this cause, and that he testified as a witness for the state both in chief and in rebuttal. For the reasons stated, the trial court erred, to the substantial prejudice of defendant in this cause, in overruling defendant's motion to quash the panel of the special venire of jurors served by the sheriff.

The deceased signed a written dying declaration, por-

tions of which were admitted in evidence over the objection and exception of defendant, and it is contended in this court that the trial court erred in admitting certain portions of deceased's dying declaration. The question of the admissibility of this evidence is a matter which will necessarily arise upon a retrial of this cause.

"Dying declarations are statements of material facts concerning the cause and circumstances of the homicide, made by the victim under the solemn conviction of impending death." *Addington v. State,* 8 Okla. Cr. 703, 130 Pac. 315.

We have carefully examined the portions of the dying declaration admitted, and, under the definition of dying declaration above given, the conclusion is reached that the trial court committed no error prejudicial to defendant in the instant case in admitting the portions of the dying declaration of which defendant here complains.

During the progress of the trial, defendant offered to prove, in order to affect the credibility of the dying declaration of deceased, that deceased, about one year previous to his death, had been convicted in the county court of Cook county, Tex., of the crime of keeping a house of ill fame, and for the purpose of establishing such conviction the record thereof was offered in evidence, and upon objection by the state was excluded, to which action of the trial court counsel for defendant then and there excepted. We think that defendant had the right to impeach or discredit the dying declaration by showing that deceased had been convicted of a felony or of a misdemeanor involving moral turpitude, and that the record of the court showing such conviction was a proper method of proof thereof. Professor Wigmore, in his treatise on Evidence, in section 1446,

states in respect to the dying declarations that "the declarant is open to impeachment and discrediting in the same way as other witnesses so far as such a process is feasible," and further that a showing of conviction of crime is one of the feasible methods by which the declarant may be impeached. The reason for such rule seems to be that the proof of the conviction of declarant of such a crime by producing the record thereof raises no collateral of fact, and presents nothing for further inquiry; the record of conviction being conclusive evidence of guilt of the offense. In the case of *State v. Baldwin et al.*, 15 Wash. 45 Pac. 650, the Supreme Court of Washington say:

"There was some testimony to show that the deceased had been convicted of a felony, and appellants contend that for this reason the dying declaration should not have been received, as it would have been inadmissible under the common-law rule. But this is because such person could not have been a competent witness if alive. In this state the statute has changed the rule (section 1647, 2 Hill's Code), and the deceased would have been a competent witness, had he been living; the conviction having been for stealing cattle. The conviction could be shown for the purpose of affecting his credibility. As the statute has changed the rule admitting such testimony by a living witness, the same results should follow as to a dying declaration, for the same proof of conviction can be made to affect the credibility of the declaration, and it was done in this instance."

A conviction of keeping a house of ill fame is for an offense involving moral turpitude, and, had the declarant been living, there would have been no question about the right of counsel for defendant to cross-examine him relative to such a conviction for the purpose of discrediting his testimony, and, should such conviction be denied, evi-

dence thereof was proper by way of impeachment.    We are
of opinion, therefore, that the trial court erred in refusing
to permit defendant in the instant case, for the purpose of
affecting the credibility of the dying declaration, to show
that deceased had been convicted of the crime of keeping a
house of ill fame in the state of Texas about one year pre-
vious to his death.

It is also contended that the trial court erred in per-
mitting the state to read the transcript of the testimony of
G. L. James given at the examining trial, for the reason
that no sufficient predicate of absence from the jurisdic-
tion of the court was laid for the introduction of such evi-
dence.    We think there is no merit in this contention, as
the evidence clearly showed that the witness was beyond
the jurisdiction of the trial court, and had been absent
from the state for a considerable length of time, and that
his attendance upon the court could not be obtained by
compulsory process.

Other alleged errors are relied upon as grounds for
the reversal of this judgment, particularly certain para-
graphs of the court's instruction to the jury relative to
certain alleged threats made upon the life of defendant by
deceased.

Paragraph 7 is open to the criticism lodged against
it by counsel for defendant, and apparently said paragraph
of the change conflicting with other portions thereof on the
subject of communicated and uncommunicated threats,
and the charge as a whole, therefore, tended in our opin-
ion to be somewhat confusing and misleading.    Paragraph
7 should not have been given in the form it was read to
the jury.    In said paragraph the trial court told the jury
that—

"Proof of communicated and uncommunicated threats could not be considered as justifying the killing on the part of defendant, unless the threats themselves were accompanied by some overt act or demonstration on the part of deceased."

Apparently it was the intention of the trial court to tell the jury that neither communicated nor uncommunicated threats would mitigate or justify a homicide, unless at the time of the killing deceased made some demonstration or overt act towards defendant which evidenced an intention to carry such threats into execution. The instruction as given, however, would tend to limit the consideration of proof of threats only to threats made directly to defendant himself, and then only as to such of those threats which were accompanied by some overt act or demonstration of hostility. Apparently such is not the law, but the jury may consider both communicated and uncommunicated threats, which of course are made against defendant to other parties, for the purpose of showing the condition of deceased's mind with reference to his feelings toward defendant, and also for the purpose of determining who was the probable aggressor in the difficulty, where the plea of self-defense is interposed, and there is evidence reasonably tending to support the same.

Other matters called to the attention of the court in the brief of counsel representing defendant, and relied upon as grounds for reversal, are considered to be without prejudice to the substantial rights of defendant. We have in this opinion covered those errors committed by the trial court which we deem to have been prejudicial to the substantial rights of defendant, sufficient to require the reversal of this judgment of conviction; also we have treated of other alleged errors respecting matters of procedure

which are likely to arise upon a retrial of this case.

Upon a careful consideration of the entire record, it is the opinion of the court that the judgment of conviction of manslaughter rendered against the defendant, Haney Liddell, in the district court of Love county, in which the defendant was sentenced to serve a term of four years' imprisonment in the state penitentiary for the killing of one T. M. Boyd, be reversed, and the cause remanded for a new trial; and it is so ordered.

DOYLE, P. J., and ARMSTRONG, J., concur.