STATE OF NORTH DAKOTA, Respondent, v. TIMOTHY O. SHAHANE, Appellant.

(219 N. W. 132.)

**Criminal law — plea of not guilty includes every defense except previous jeopardy or former conviction or acquittal.**

. 1. Under §§ 10,746, 10,750 and 10,751, Comp. Laws 1913, a plea of not guilty includes the defense of insanity and every defense except previous jeopardy,. or former conviction or acquittal.

**Criminal law — sanity of defendant — jury should be instructed that act. by insane person cannot be punished.**

2. Under § 11,063, Comp. Laws 1913, "An act done by a person in a state

---

Note.—(1) Plea of not guilty in homicide as including insanity, see 13 R. C. L.. 709.

(2) Weakness of mind as affecting responsibility for criminal act, see annotation: in 10 L.R.A. (N.S.) 999; 13 R. C. L. 710; 3 R. C. L. Supp. 75; 4 R. C. L. Supp. 826..

of insanity cannot be punished as a public offense," and if there is any evidence of a defendant's insanity at the time of the alleged commission of the offense, whether it appears from the evidence of the defense or the state, the jury should be instructed on the law; but the question as to whether there is evidence of the defendant's insanity is one primarily for the trial court, and in the light of the testimony in this case we cannot say that the court erred in not instructing on the question of the defendant's insanity.

**Homicide — when theory is that death was caused by accident, there should be clear instructions thereon.**

3. When, in a homicide case, one of the theories of the defense is that the homicide was the result of an accident, or misfortune and was unintentional, and such theory finds support in the evidence, it is the duty of the court to instruct fully and clearly as to the law relating to accident or misfortune.

**Homicide — if defendant stabbed deceased accidentally, while doing a lawful act, instruction that killing was excusable held not error.**

4. An instruction that "if the defendant did cut or stab the deceased in the manner and form set forth in said information, but that in the excitement of the moment or otherwise, the cutting or stabbing was accidental while the defendant was engaged in doing a lawful act, by lawful means, with usual and ordinary caution, then the killing was excusable," is not erroneous.

**Homicide — when defendant may show that deceased was dangerously insane.**

5. In a homicide case, where there is evidence that at the time of the homicide the deceased was insane, that he first made an attack upon the mother of the defendant, and then upon the defendant, it is competent for the defense to show by expert testimony that the deceased was afflicted with a form of insanity at the time which made him dangerous.

**Criminal law — use of medical textbook in opposition to medical expert's testimony is error.**

6. It is error to permit the text in a medical book to be used, directly or indirectly in opposition to the testimony of a medical expert given on the stand, for the reasons that the author of the text is not under oath, is not subject to the test of a cross-examination, and is not present in court to confront the defendant.

**Homicide — peaceable reputation of deceased not competent to disprove specific acts of cruelty.**

7. The general reputation of the deceased as a peaceful law-abiding man is not competent to disprove or rebut specific acts of cruelty and violence of the deceased to his wife, his son, and domestic animals in the home, and the admission of such testimony under objection was error.

Opinion filed April 10, 1928.

Criminal Law, 16 C. J. § 757 p. 416 n. 80; § 777 p. 431 n. 12; § 1527 p. 744 n.

10; § 2285 p. 925 n. 56; § 2371 p. 973 n. 91.   Homicide, 30 C. J. § 469 p. 232 n. 42; § 470 p. 233 n. 51; § 612 p. 358 n. 13; § 639 p. 393 n. 95.

Appeal from the District Court of Grand Forks County, *Cooley,* J. Reversed and new trial granted.

*J. E. Garvey* and *H. C. DePuy,* for appellant.

"The instructions should cover the whole case. The defendant is entitled to an instruction defining the law as applicable to his defense, if there is any competent evidence reasonably tending to substantiate that defense." Reed v. State (Okla.) 24 L.R.A.(N.S.) 268.

"A defendant in a criminal action is entitled to have submitted to the jury with proper instructions, all defenses of which there is any support in the evidence, whether such defenses are consistent or inconsistent." State v. Hazlet, 16 N. D. 426, 113 N. W. 374.

*Harold P. Thomson,* State's Attorney and *George A. Bangs,* for respondent.

"The atrociousness or terrible nature of a criminal act is not evidence of the insanity of the perpetrator. Nor is the fact that the act was committed with barbarity, or that the act was of an unnatural character. Nor is the enormity of the crime proof of insanity." 1 Wharton & S. Med. Jur. 223.

"That it is not sufficient to establish irresponsibility to show epileptic affliction, but it must be shown by evidence as a fact that epilepsy is a disease which affects the mind or produces insanity, and that there was legal insanity in the given instance." Walsh v. People, 88 N. Y. 458; Oborn v. State, 143 Wis. 249, 126 N. W. 737.

"The law should not permit, and we are quite clear that it does not permit, any judicial tribunal to infer that a man is insane simply and solely because some of his ancestors have been so." Pringle v. Burroughs, 185 N. Y. 375, 78 N. E. 150.

"Until the disease manifests its presence (in the testator) we cannot infer its existence. A tendency to a hereditary disease by no means establishes that it exists." Snow v. Benton, 28 Ill. 306.

The character of the deceased as a violent and dangerous man, offered in evidence for the purpose of showing that the accused had reason to believe himself to be in danger, is not material unless knowledge of such

character upon the part of the accused is shown. Wharton, Homicide, 3d ed. § 263.

BURKE, J. The defendant was tried for murder in the county of Grand Forks, on a change of venue from Pembina county. He was convicted of murder in the second degree. He states in his brief on appeal, that the defense was upon two theories, first: "If the testimony of the only two living eye witnesses is true, then the defense of self-defense, defense of mother, and accidental homicide, either, or two or more concurring, were responsible for the death of the father:"

Second: "If the testimony of the state's witness is true, and whether the testimony of the two eye witnesses as to the manner of the stabbing was true or untrue, then there was a reasonable doubt of the mental balance of the defendant, himself."

There were but three persons present at the time of the homicide, the defendant, his mother and father. The first error discussed by the defense is the refusal of the court to give to the jury the following instructions, viz.:

"In this case there is not any inconsistency in the defense of self-defense, defense of his mother, accidental killing, or of his mental derangement, and if you find that the defendant acted in his own defense, or that he acted in defense of his mother, or that the stabbing was accidental, or that he was mentally deranged so as to be incapable of knowing the wrongfulness of his acts at the time of the alleged stabbing, or if you believe that there is a reasonable doubt with respect to any or all of such defenses, you must return a verdict of not guilty."

In its instructions the court said:

"The defense in this case urges that the homicide was justifiable, and I charge you that if under the evidence and the law that has been given to you, you find this to be true, or entertain any reasonable doubt thereof, you can convict the defendant of no offense, and your verdict should be not guilty."

He then proceeds to instruct on the law of self-defense, and follows with an instruction on the law in defense of the mother. Nowhere else in the instruction does he refer to any other defense urged by the defendant, although he does instruct generally an excusable homicide, and self-defense. There is no instruction on the theory that the defendant

was insane and no instruction stating that the defense of accidental death is urged by the defendant.

Under § 10,746 Comp. Laws 1913, there are four pleas, viz.: guilty, not guilty, a former judgment of conviction or acquittal, and once in jeopardy. In this case the defendant pleaded not guilty, and that plea, under § 10,750 Comp. Laws 1913, puts in issue every material allegation in the information or indictment, and under § 10,751, all matters of fact tending to establish a defense other than those specified in the third and fourth subdivisions of § 10,746, may be given in evidence under the plea of not guilty. The subdivisions referred to embrace former conviction, acquittal, and previous jeopardy which must be specially pleaded. It follows, that evidence of accidental death, insanity, self-defense, defense of another person, and any and every other defense may be offered under a plea of not guilty, save and except, the defense of former conviction or acquittal, or previous jeopardy, and if there was any evidence of defendant's insanity the instruction asked by the defendant, or some instructions, should have been given on that subject.

The defense claims, that there is evidence tending to establish the insanity of the defendant, viz.: "the defendant's weakened physical condition, lying in bed for more than a year, with tuberculosis of the bowels and of both lungs, never using his legs, using his arms only when he ate or to hold a book, his brooding over his father's brutality to himself and his mother, his father's epileptic insanity, the death of his sister from epilepsy, the testimony of William Shahane that the defendant rushed by him in a rage, so fast that he could not catch him; that when the defendant got out into the dining room he heard the defendant yell, "I got him;" that later he gave the knife to witness and said, "I fixed him;" and the testimony of the defendant, viz.: "I was just stepping in the door, he whirled on her and made a grab for her, his eyes were about the size of horses' eyes, he had those black veins on his forehead, I never saw her so scared, I never saw him so mad, he ran after her and she ran to me, I thought I was going to die and I got scared, I felt this membrane tear loose in my side, the air was black, and then it turned white, and there was a white fog; it was coming right at me, I could hardly see with this thick fog, I could see a head and fist coming at me, I had this knife in my pocket, I pulled it out, and then I yelled, 'Get to hell out of here,' and that is all I knew until I was back up against the

sideboard unconscious there; that epilepsy is hereditary tending to weaken the mental forces, descending from parent to child, and entailing upon the offspring grave forms of nervous maladies, and that the trial court could not say, as a matter of law, that there was no evidence of insanity to submit to the jury."

Under § 11,063 Comp. Laws 1913, "An act done by a person in a state of insanity cannot be punished as a public offense." It is clear from this statute, that if there is any evidence of the defendant's insanity whether on the part of the state or the defense or from any evidence brought out at the trial from any source, the instruction should be given.

The question as to whether there is evidence is one primarily for the court. There was no evidence offered to prove the insanity of the defendant and no claim of insanity made until the instruction was presented to the court: and in the light of the testimony relied on by the defendant, we cannot say that the trial court erred in not instructing on the question of the defendant's insanity.

The instruction requested also calls for an instruction on accidental killing which was refused, and the defendant assigns as error the following instructions; viz.:

"I therefore charge you that if you find from the evidence in this case that the defendant did at the time and place mentioned in the information, cut or stab the said Timothy J. Shahane in the manner and form set forth in said information, inflicting a wound upon said Timothy J. Shahane, from which he subsequently died, but that in the excitement of the moment or otherwise thus cutting or stabbing was accidental while the defendant was engaged in doing a lawful act by lawful means with usual and ordinary caution, then the killing of the deceased Timonthy J. Shahane, was excusable."

It is the contention of the defendant that this instruction assumes that the defendant cut or stabbed the deceased, and it does not take into consideration the testimony of the mother, and of the defendant, that the defendant did not strike at, or stab the deceased, that he was holding the knife straight out, the mother grabbed his arm pulled it down, and in the application of the law of accident the court ignored that testimony. A majority of the members of this court are of the opinion that there is no error in this instruction.

After the testimony of the expert, Dr. Glaspell, in answer to a hypothetical question, that the deceased was insane at the time of the homicide, the defense attempted to show by Dr. Glaspell that the deceased was afflicted with a dangerous form of insanity at said time, based upon the facts stated in the hypothetical question, and the sustaining of an objection to such testimony is assigned as error. The record is not as clear as it should be as to whether the expert was being asked concerning the deceased or whether he was being asked concerning a person showing the symptoms described in the hypothetical question. However, it seems to us that the latter is the correct interpretation of the record.

In all cases of self-defense when it is shown that the deceased was the assaulting party, it is competent to show that the deceased was a violent, dangerous and blood-thirsty man, and so known to the accused. State v. Shafer, 22 Mont. 17, 55 Pac. 526; State v. Matthews, 78 N. C. 523; State v. Nett, 50 Wis. 524, 7 N. W. 344; People v. Powell, 87 Cal. 348, 11 L.R.A. 75, 25 Pac. 481. Threats communicated and uncommunicated may be shown, Liddle v. State, 18 Okla. Crim. Rep. 87, 16 A.L.R. 405, 193 Pac. 52. "The admissibility of threats usually depends on the fact that they were communicated to the accused before the homicide. But uncommunicated threats may be received to corroborate those communicated, and to show the mental condition of the deceased toward the accused where there is doubt who was the aggressor." Underhill, Crim. Ev. § 326. It may be shown that the deceased was a dangerous man when intoxicated. Not all men are dangerous when intoxicated, and, therefore, it is competent to show in a case where self-defense is relied on that the deceased was dangerous when intoxicated; likewise, all insane persons are not dangerous. The expert testified that the deceased was insane at the time of the homicide; like the man intoxicated, he might be dangerous, or perfectly harmless, and if it is proper to show in self-defense that an intoxicated man is dangerous, there is no reason why it is not also proper to show that an insane man is dangerous. The defendant knew the condition of the deceased, he had seen him in many fits, and could tell when a fit was coming on. He saw the change in his appearance, and it was competent for the defense to show, if it could be shown, that the deceased was afflicted with a form of insanity at the time of the homicide which made him a dangerous man. As stated in Lang

v. State, 84 Ala. 1, 5 Am. St. Rep. 324, 4 So. 193, "The purpose of evidence of turbulence and violence on the part of the deceased in homicide, is to show the honesty of the belief of the accused of imminent peril." The subject is thoroughly discussed and annotated in State v. Feeley, 194 Mo. 300, 92 S. W. 663, 3 L.R.A.(N.S.) 358, 112 Am. St. Rep. 511 and notes thereto; 13 R. C. L. 817, §§ 122–124; Surges v. State, 88 Tex. Crim. Rep. 288, 225 S. W. 1103. The evidence should have been admitted.

On cross-examination, Dr. Glaspell is asked this question: "Now Doctor, getting down to the subject of epilepsy generally, and not with reference to this case, is it not a fact that it is not all epileptics who suffer mental derangement or mental deterioration for some of them retain a peculiar normal mind?" To which question there was an objection on the ground that the state's attorney was reading from a book. The objection was overruled. The answer is, "No, it is not a fact." "Q. So if such an authority as Wharton and Stilles Medical Jurisprudence states that it is a fact, would you say they are wrong?" To which question the court overruled an objection. The doctor is not asked what medical books he has read on the subject, or whether he had read Wharton and Stilles, and it is the contention of appellant that the state got indirectly before the jury the theory of Wharton and Stilles as opposed to that of Dr. Glaspell.

It is permissible to prepare questions from medical books and to cross-examine a medical expert on the theory of the medical works, from which he claims to base his opinion. It is not permissible to use medical books in opposition to medical expert testimony given upon the stand, for the very good reason that the authors are not under oath, are not subject to the test of a cross-examination, and the defendant is entitled to be confronted with the witnesses against him. State v. Burnette, 28 N. D. 539, 150 N. W. 271, Ann. Cas. 1916E, 340; Dolan v. O'Rourke, ante, 416, 217 N. W. 666. The objection should have been sustained, but the testimony was not prejudicial. The state offered evidence to prove the general reputation of the deceased as a peaceful law-abiding citizen, and an objection on the ground that there had been no attack made upon his general reputation, that the evidence introduced on the part of the defense was to show his violence and cruelty to his wife, his son and domestic animals in the home, all of which was known to the

defendant, was overruled and the evidence admitted. The state insists that there was an attack made upon the general reputation of the deceased as a peaceable man by the defendant, and claims that a great mass of evidence was introduced, the purpose of which was to show the violent dangerous character of the deceased, and gives the line and page in the record where such testimony may be found.

We have examined carefully the testimony referred to in the brief for the state, and none of it relates to the general reputation of the deceased, but all relates to specific acts of violence in the home. Therefore, the testimony of general reputation of the deceased did not rebut, or disprove the specific acts of violence, was incompetent and should have been excluded. The admission of this testimony was highly prejudicial, for which there must be a new trial. The other assignments of error are not considered, as there is no probability of the questions involved arising in a new trial.

NUESSLE, Ch. J., and BURR, BIRDZELL, and CHRISTIANSON, JJ., concur.