McMORRIS, Plaintiff in error, v. STATE, Defendant in error.

*No. State 111. Argued February 28, 1973.—Decided April 9, 1973.*
(Also reported in 205 N. W. 2d 559.)

For the plaintiff in error there was a brief by *Anthony S. DeMark* and *Wratten, Dana & DeMark,* all of Racine, and oral argument by *William A. DeMark.*

For the defendant in error the cause was argued by *James H. McDermott,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

CONNOR T. HANSEN, J. The issue on this appeal is whether evidence of prior specific acts of violence by the victim of an assault, against others than the defendant, is admissible in a prosecution for injury by conduct regardless of life,[1] when the defendant raises the issue of self-defense.

It is undisputed that the defendant adduced at trial sufficient evidence to raise the issue of self-defense.[2] The trial court so instructed the jury.[3]

---

[1] Sec. 940.23, Stats.

[2] Sec. 939.48, Stats.

[3] *See: Thomas v. State* (1972), 53 Wis. 2d 483, 192 N. W. 2d 864, where the conflict in the testimony between the state's

The defendant testified that Tucker's reputation in the community for violence was "bad." An offer of proof was made to the trial court to demonstrate that at the time the defendant and Tucker were fighting, the defendant had personal knowledge of prior violent acts by Tucker. The trial court sustained the objection of the state to the admission of this evidence. In so doing, the trial court stated that a witness cannot testify as to the reputation of another witness on the basis of his personal knowledge because the standard is the general reputation of the person in the community where he lives.[4]

Therefore, the question before this court is whether defendant, after establishing a factual basis to raise the issue of self-defense, may introduce evidence of personal knowledge of prior acts of violence on the part of the victim to prove what the defendant believed to be the turbulent and violent character of the victim; and the conditions under which such evidence may be admissible.

Because the evidence submitted in defendant's offer of proof is pertinent to this appeal, her testimony on direct examination is set forth in detail. She testified as follows:

"*Q.* What knowledge, if any, did you have?
"*A.* What knowledge did I have? I have seen it.
"*Q.* What have you seen?
"*A.* Oh, walking in taverns and bust people upside the head with beer bottles. I have seen her take a shot at her brother-in-law. I have seen her pull guns on her brother-in-law.
"*Q.* What if anything are you aware of, concerning her husband?
"*A.* She shot him.
"*Q.* That is all I have. Do you want to cross-examine? Perhaps I can ask one more question. Did those events

witnesses and the accused, on the issue of self-defense, did not present a factual basis for the jury to consider the issue and the trial court correctly rejected the self-defense instruction.

[4] *See: State v. Sabala* (1966), 32 Wis. 2d 95, 101, 102, 145 N. W. 2d 95.

that you have testified to, occur prior to the difficulties between you and Mrs. Tucker?

"*A*. Yes, long before, yes."

On cross-examination, the defendant testified:

"*Q*. Well, you say, if I may, you say these acts took place long before the fight on July 31st, right?

"*A*. A-ha such as, yes some of them, when she shot her husband.

"*Q*. When was that?

"*A*. That was in 1966 or '67. But recently she haven't put a gun and took a shot at her husband. As of at her brother-in-law, about five or six months ago.

"*Q*. Were you there when it happened?

"*A*. I was right there.

"*Q*. Where did this happen?

"*A*. It happened at the Twenty Grand on the south side of the Twenty Grand, when she pulled a gun on her brother-in-law and shot at him. It happened as recently as maybe four months ago that she jumped on, come behind this man here, and her sister and hit him in the head and put him in the hospital, as recently as about four months ago.

"*Q*. Where did that happen?

"*A*. In the Twenty Grand.

"*Q*. What was her brother-in-law doing?

"*A*. Standing up and she just walked up on him. He had been into it with his wife, which is her sister."

In civil cases it has been recognized that a person's possession of a particular character trait may be an operative fact which under the substantive law determines the legal rights and liabilities of the parties and, where that character trait is in issue, that trait of character must be open to proof, including a showing of specific acts.[5]

---

[5] In actions for seduction, evidence may be admitted to show a want of chastity in the woman. Want of previous chastity may be proved by general reputation and specific acts of unchastity. *Ward v. Thompson* (1911), 146 Wis. 376, 382, 131 N. W. 1006; *Stewart v. Smith* (1896), 92 Wis. 76, 78, 65 N. W. 736.

In criminal actions, when the reputation or character of the victim in the assault cause is not directly in issue, evidence thereof is not relevant.[6] However, in trials for homicide or assault in which the issue of self-defense is sufficiently raised, evidence of the turbulent and dangerous character or reputation of the deceased or the victim of the assault is relevant in determining whether the victim or the accused was the aggressor, and as bearing on the reasonableness of the defendant's apprehension of danger at the time of the incident. This rule has been generally recognized by the law of Wisconsin [7] and most other jurisdictions.[8]

However, the particular issue on this appeal has not been presented to this court for consideration.[9] Those jurisdictions, in which the issue has been decided, conflict as to what is the better rule.[10] We are of the opinion

In defamation cases, defendant may demonstrate the truth of his statements as to plaintiff's character through evidence as to the specific acts of plaintiff tending to establish such. *Bilgrien v. Ulrich* (1912), 150 Wis. 532, 535, 137 N. W. 759.

*See also:* McCormick, *Evidence* (2d ed. hornbook series), p. 443, sec. 187; *Proposed Wisconsin Rules of Evidence*, sec. 904.04, Character evidence not admissible to prove conduct; exceptions; other crimes. 56 Marq. L. Rev (1973), 210.

[6] 1 Jones, *Evidence* (6th ed.) p. 462, sec. 4:40; 1 Wharton's, *Criminal Evidence* (12th ed.), p. 473, sec. 228.

[7] Where self-defense was an issue, it was prejudicial error to refuse evidence tending to show that the victim was "known to be a desperate, fighting, ruffianly man, ready to fight on the slightest occasion." *State v. Nett* (1880), 50 Wis. 524, 527, 7 N. W. 344.

[8] Annot. (1965), *Admissibility of evidence as to other's character or reputation for turbulence on question of self-defense by one charged with assault or homicide,* 1 A. L. R. 3d 571, 575.

[9] While this court held in *State v. Nett, supra,* that it was prejudicial error to bar evidence tending to prove the violent character of the accused where self-defense was in issue, there is no record of the specific offer of evidence.

[10] Annot. (1939), *Admissibility on issue of self-defense (or defense of another), on prosecution for homicide or assault, of evi-*

the better rule is that of those jurisdictions which hold that where there is a sufficient factual basis to raise the issue of self-defense, and the turbulent and violent character of the victim is an essential element of the defense, proof should be admitted as to both the reputation of the victim and the defendant's personal knowledge of prior relevant conduct of the victim.[11]

We believe those jurisdictions which have adopted rules of inadmissibility of specific acts generally fail to recognize the distinction between evidence for establishing the character or reputation of the victim in the community and evidence for the purpose of explaining or proving the defendant's motive or apprehensions, by showing what he reasonably believed to be the victim's character. The court, in *Mortimore v. State* (1916), 24 Wyo. 452, 475, 476, 161 Pac. 766, stated:

". . . It is true that the general rule permits the character of the deceased, when admissible at all, to be shown only by evidence of general reputation, and not by evidence of specific acts. . . . But in several well reasoned cases it is held that former specific acts of violence of the deceased showing his brutal or dangerous disposition and character known to the defendant, that is, acts committed in his presence, or communicated to him before the homicide, are admissible in evidence, not for the purpose, primarily, of showing the deceased's character, but to explain the defendant's motive and what he might reasonably have apprehended as to the danger. . . . [Citations.]

"The authorities to the contrary seem to regard such evidence as an attempt to show the character of the deceased. But we think the distinction between evidence for that purpose and evidence to show defendant's actual knowledge of the deceased's character, in such cases, is coming to be more generally recognized, and that it is a reasonable one. The reason for it appears to us to be

*dence of specific acts of violence by deceased, or person assaulted, against other than defendant,* 121 A. L. R. 380.

[11] Such a rule is consistent with sec. 904.05 of the *Proposed Wisconsin Rules of Evidence, supra,* at page 214.

at least as strong, if not stronger, than that which permits proof of the general reputation of the deceased for violence. . . ."

The past conduct of a person markedly affects what others may reasonably expect from him in the future. When the accused maintains self-defense, he should be permitted to show he knew of specific prior instances of violence on the part of the victim. It enlightens the jury on the state of his mind at the time of the affray, and thereby assists them in deciding whether he acted as a reasonably prudent person would under similar beliefs and circumstances. In *State v. Gordon* (1935), 37 Del. 219, 222, 223, 181 Atl. 361, the court stated:

"The question here is whether the accused may testify to specific instances, either known to him personally, or by hearsay, of an affray in which the deceased was the aggressor and had used a knife. The state of mind of the accused is material. The jury is to pass upon his belief, that the deceased was about to attack him. Without doubt, the reputation of the deceased for violence, known to the accused, is admissible; and there seems to be no substantial reason why the belief of the prisoner should not be evidenced by knowledge of specific acts of violence, as well as by knowledge of general reputation for violence, subject, of course, to exclusion in a proper case for remoteness. No such contention is, however, made here."

When self-defense is asserted in a prosecution for assault or homicide, there is no substantial reason for the exclusion of particular violent acts of the victim, known to the defendant prior to the incident from which the charges arose. As stated in 1 Wigmore, *Evidence* (3d ed.), pp. 676, 677, sec. 198:

". . . When the turbulent character of the deceased, in a prosecution for homicide, is relevant . . . there is no substantial reason against evidencing the character by *particular instances of* violent or quarrelsome *conduct.* Such instances may be very significant; their number

can be controlled by the trial Court's discretion; and the prohibitory considerations applicable to an accused's character . . . have here little or no force." [12]

When the issue of self-defense is raised in a prosecution for assault or homicide and there is a factual basis to support such defense, the defendant may, in support of the defense, establish what the defendant believed to be the turbulent and violent character of the victim by proving prior specific instances of violence within his knowledge at the time of the incident.

In those instances in which the defendant failed to establish a factual basis to raise the issue of self-defense, prior specific acts of violence by the victim would have no probative value. Also, when the defendant seeks to introduce such evidence to establish his state of mind at the time of the affray, it must be shown that he knew of such violent acts of the victim prior to the affray.[13] The admission of such evidence rests in the exercise of sound and reasonable discretion by the trial court.

The other issues raised are not dispositive of this appeal. However, we conclude it was error to exclude the testimony offered by the defendant, and that such evidence substantially affected the rights of the defendant.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.

ROBERT W. HANSEN, J. (*dissenting*). Here the defendant, found guilty by a jury of injury by conduct

[12] *See:* Sec. 904.05 (2) of the *Proposed Wisconsin Rules of Evidence, supra,* at page 214.

[13] "Where the evidence of propensity for violence is offered to corroborate other evidence that the victim of the assault was the aggressor, it would not be necessary to show knowledge on the part of the defendant of the victim's aggressive character. . . ." 1 Jones, *Evidence* (6th ed.), pp. 464, 465, sec. 4:40.

regardless of life, claimed to have acted in self-defense. So she needed to convince the jury that she had reasonable grounds to believe that the force she used was necessary to prevent death or harm to herself.[1] So evidence as to the character or reputation of the person allegedly assaulted by this defendant was, as the trial court ruled and the majority notes, admissible as bearing upon the reasonableness of the defendant's apprehension of danger to herself.[2]

Here the defendant sought to establish the reasonableness of her apprehensions by (1) testimony as to the general reputation of the person stabbed; and (2) prior incidents involving the person allegedly assaulted and persons other than the defendant. Was, as the trial court ruled, such offered evidence as to other incidents involving other persons inadmissible? Clearly, in a majority of states, the offered testimony is inadmissible,[3] unless closely connected in point of time so as to become part of the *res gestae.*[4] These states limit testimony as to the character of the person assaulted to his general reputation and character, holding neither established by prior situations involving the person assaulted and someone other than the defendant.[5]

---

[1] "A person . . . may not intentionally use force which is intended or likely to cause death or great bodily harm unless he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself . . . ." Sec. 939.48 (1), Stats., in material part, quoted in *Thomas v. State* (1972), 53 Wis. 2d 483, 487, 192 N. W. 2d 864.

[2] *See:* Annot. (1965), 1 A. L. R. 3d 571–575, *Admissibility of evidence as to other's character or reputation for turbulence on question of self-defense by one charged with assault or homicide. See also: State v. Nett* (1880), 50 Wis. 524, 527, 7 N. W. 344.

[3] *See:* Annot. (1939), 121 A. L. R. pp. 382–390, sec. II.

[4] *See:* Annot. (1939), 121 A. L. R. pp. 410–415, sec. IV (b).

[5] *See:* Annot. (1939), 121 A. L. R. pp. 382–390, sec. II.

The majority goes the other way to hold that the defendant here should have been permitted to show that there were specific instances, about which she knew, in which the person stabbed had acted violently or turbulently toward persons other than the defendant. Some states so hold,[6] and some text writers so recommend.[7] The majority sees ". . . no substantial reason for the exclusion of particular violent acts of the victim, known to the defendant prior to the incident from which the charges arose. . . ."

Where the majority sees no substantial reason for excluding evidence of other incidents, remote in time and not involving the defendant, the writer sees four: The rule that earlier incidents, involving the victim but not the defendant, may be inquired into will surely:

1. *Unduly lengthen the trial* of assault and homicide cases where self-defense is an issue.[8] When witnesses for the defense testify as to what the victim did or did not do on a half-dozen earlier occasions, surely the victim or complaining witness will have the opportunity to dispute such testimony. So, instead of one trial as to whether the defendant acted in self-defense, we will have the half-dozen more as to whether the complaining witness acted in self-defense or acted at all. With trials delayed and criminal court calendars clogged, the resultant lengthen-

---

[6] *See:* Annot. (1939), 121 A. L. R. pp. 390–406, sec. III.

[7] *See:* 1 Wigmore, *Evidence* (3d ed.), pp. 676, 677, sec. 198.

[8] *See: Ruffin v. State* (1956), 50 Del. 83, 91, 123 Atl. 2d 461, 465, holding inadmissible details of specific offenses allegedly committed by victim, stating: "But there must be a limit to the admission of such testimony. To allow a defendant to put into evidence the details of numerous acts of violence in order to show a deceased's reputation for violence would permit the introduction into the trial of collateral issues and would in some cases undoubtedly delay the trial of the case for an interminable length of time. . . ." (This limits the application of *State v. Gordon* (1935), 37 Del. 219, 222, 223, 181 Atl. 361, cited and relied upon by the majority.)

ing of time of trial affects directly the administration of criminal justice.

2. *Unwisely confuse the jury.* Collateralizing the trial to include inquiries into a number of incidents involving the victim, but not the defendant, will, the majority says, "assist" the jury in deciding the case involving the defendant. From such assistance, juries might well pray to be saved. Now the jury must consider not only what the defendant here did in one situation, but also what the victim or complaining witness did or did not do in a half-dozen other situations, none involving the defendant. One self-defense issue could blossom into a half-dozen, for surely the turbulent or violent character of a victim is not affected by a situation in which such victim acted to defend herself, or did nothing at all. Certainly the attention of the jury would be diverted to the collateral issues raised, with the issue of guilt of the defendant overshadowed, or, at least, outnumbered.[9]

3. *Unfairly introduce a double standard.* Defendant's brief argues that what defendant sought to show by the excluded evidence was the victim's "propensities toward violence." The "propensity" theory argues that one who got drunk six years ago is more likely to have been intoxicated yesterday, than if the earlier lapse from sobriety had not occurred. That is hardly the way to deter-

---

[9] *State v. Duncan* (Mo. 1971), 467 S. W. 2d 866, 868, the court stating: ". . . if evidence of specific acts could be relied on to prove that deceased was of a violent disposition it would likely result in the raising of any number of collateral issues, the trial of which might be quite lengthy and also would tend to divert the minds of the jurors from the main issue. If the rule were as defendant contends it should be it is not difficult to imagine a case in which the extensive evidence offered on each side in regard to alleged specific acts of violence by deceased would completely overshadow the main issue concerning defendant's guilt or innocence."

mine character.[10] The jury is tempted to conclude that because a victim of a crime may have acted improperly, six months or six years earlier, he or she is likely to have acted improperly in the situation resulting in the defendant being charged with crime. Arguably, criminal records of a complaining witness ought be also admitted for these show "propensities" beyond reasonable doubt. Meanwhile, the complaining witness, in giving her account of a fight or struggle, may not refer to earlier incidents involving the defendant.[11] And, of course, a defendant's records of convictions, even for identical or similar crimes, may not be introduced into the record.[12] Why assist a jury to know of earlier incidents in the life of the victim when you cannot supply identical assistance as to earlier incidents in the life of the defendant? What is not sauce for a gander ought not be sauce for a goose.

4. *Unnecessarily complicate the trial.* All that we are talking about is the character and reputation of the assault victim as bearing upon reasonableness of apprehensions claimed by the defendant. The defendant, claim-

---

[10] *Id.* at page 868, stating: ". . . Perhaps the most cogent reason for the rule is indicated in State v. Colvin, 226 Mo. 446, 126 S. W. 448, 461, wherein the court approved a quotation that 'The man's character is to be judged by the general tenor and current of his life, and not by a mere episode in it.' We can readily understand that many men who are ordinarily peaceable and law-abiding, on a few occasions in an entire lifetime, may have acted in a rash and turbulent manner. Those few occasions should not be considered appropriate proof that such a man is of a violent and turbulent nature."

[11] While admissible for some purposes, evidence of prior crimes, incidents or occurrences involving the defendant, ". . . is not admissible for purposes of proving general character, criminal propensity, or general disposition on the issue of guilt or innocence because such evidence, while having probative value, is not legally or logically relevant to the crime charged. . . ." *Cheney v. State* (1969), 44 Wis. 2d 454, 460, 461, 171 N. W. 2d 339, 174 N. W. 2d 1. *See also:* 24B C. J. S., *Criminal Law*, pp. 114–122, sec. 1915 (17).

[12] *Cheney v. State, supra,* at pages 460, 461.

ing self-defense, can take the stand to assert that she, on the basis of what she heard or earlier saw, believed the victim to be a violent or turbulent character. Unchallenged, that is all that needs be said. If the state elects to cross-examine as to whether such belief was in fact reasonable or warranted, the defendant could then have, in rebuttal, the right to testify as to incidents that she herself saw or witnessed. As to what she heard from others but did not observe—the hearsay basis for her belief—it would still make no difference as to what actually happened at the occasions about which the defendant was told. Her belief, necessarily, would be based on what she saw and what she heard, and, even in rebuttal, the writer would make what she saw or heard the extent of evidence as to prior specific instances held admissible. Permitting in rebuttal what is not permitted in case-in-chief or defense-in-chief has impressive credentials. For it is exactly what the United States Supreme Court has done with *Mirandaless* confessions in the *Harris Case.*[13] What cannot be used in the case-in-chief can become usable in rebuttal for rebuttal purposes.

For the four reasons stated, the writer would not adopt the open door policy as to earlier incidents involving a complaining witness or victim and other persons, but not involving the defendant. Only where such unrelated incidents were observed by a defendant would the writer hold them admissible, and then only in rebuttal where reasonableness of defendant's claimed apprehensions had been challenged. This would prevent a trial of a defendant on an assault or murder charge from being transformed into a trial of the victim or complaining witness as to characteristics or "propensities." On this record, on the issue raised, the writer would affirm.

[13] *Harris v. New York* (1971), 401 U. S. 222, 91 Sup. Ct. 643, 28 L. Ed. 2d 1.