PER CURIAM.
¶1 George Brown appeals a judgment of conviction for first-degree reckless injury with a dangerous weapon and circuit court orders denying his postconviction motion for a new trial and his motion for reconsideration.[1] Brown argues that the circuit court erred in instructing the jury and in excluding evidence of the victim's prior violent acts. Brown also contends that he received ineffective assistance of counsel. We reject these arguments and affirm.
BACKGROUND
¶2 Brown was charged with attempted first-degree intentional homicide and first-degree reckless injury, both with a dangerous weapon, following a physical altercation in which Brown stabbed the victim in the head. The testimony at trial established that Brown invited the victim to a barbecue at Brown's house. An argument between Brown and the victim escalated into a scuffle in Brown's garage. Friends intervened to separate the two men. Brown then told the victim to leave, and the victim walked out to his car in the street. However, the argument continued as the victim stood in the street in front of Brown's house. The victim took off his shirt, as if to fight, and also took off his shoes and threw them at Brown. Brown took off his own shirt, as if to say, "I'm ready too.". Brown also threw the victim's shoes back at him. Brown then proceeded to throw scrap wood and kindling sticks from the top of the driveway toward the victim, who was standing in the middle of the cul-de-sac.
¶3 At that point, the trial testimony diverged significantly. The victim's wife testified that after Brown threw pieces of wood at the victim, Brown said, "I've got something for you" and then went into his house. Brown came back out carrying a knife and began walking down the driveway toward the victim. The victim backed away and picked up two sticks. The two men faced each other in the cul-de-sac and continued to exchange words. Brown swung his knife at the victim first, and then both men were swinging at each other. As Brown swung the knife, the victim's wife heard a crack, and the victim spun around and collapsed with a knife in his head.
¶4 According to Brown, however, the victim picked up two of the sticks that Brown had thrown at him and came toward Brown, who was standing at the top of the driveway. Brown was afraid of what the victim was going to do with the sticks, so he picked up a knife from the grill outside the garage. Brown testified that, as the victim approached Brown, the victim raised his arms and "flinched like he was going to hit [Brown]," so Brown went into "combat mode" and swung his knife at the victim. Brown testified that he was not aware that he had stabbed the victim in the head until the victim walked back down the driveway to his car and collapsed in the street.
¶5 The uncontroverted evidence established that the victim was stabbed in the head with a knife with an eight-inch blade. The knife entered the victim's skull from the left side of his head, crossed through his brain, and became impaled into his skull on "the right back side" of his head. As a result of the stabbing, the victim has numerous cognitive and physical impairments and will likely require lifelong support.
¶6 A jury found Brown guilty of first-degree reckless injury with a dangerous weapon, but acquitted Brown on the charge of attempted first-degree intentional homicide. Brown filed a postconviction motion for a new trial, which the circuit court denied after an evidentiary hearing. Brown then filed a motion for reconsideration, which the circuit court also denied. Brown appeals.
DISCUSSION
¶7 Brown makes three arguments on appeal. First, Brown argues that the circuit court erroneously denied his request for a jury instruction regarding the castle defense doctrine. Second, Brown argues that he received ineffective assistance of counsel due to his attorney's failure to capitalize on language in a court of appeals decision that might have convinced the jury to acquit him on the first-degree reckless injury charge. See State v. Miller , 2009 WI App 111, ¶ 40, 320 Wis. 2d 724, 772 N.W.2d 188 (stating that a defendant's actions taken in defense of self or others are "inconsistent with conduct evincing utter disregard" for human life). Third, Brown contends that the circuit court erroneously excluded testimony about three instances in which the victim used or threatened to use a shotgun. We address each argument below.
A. Is Brown Entitled to a New Trial With the Castle Doctrine Jury Instruction?
¶8 Brown argues that the circuit court erroneously denied his request for a jury instruction that incorporated the castle doctrine, codified at WIS. STAT. § 939.48(1m) (2015-16).[2] The castle doctrine "generally provides that use of force is presumably justified when a person is defending himself ... against an unlawful and forcible intruder in that person's home." State v. Chew , 2014 WI App 116, ¶1, 358 Wis. 2d 368, 856 N.W.2d 541. Under the standard jury instruction for self-defense, the jury is permitted to consider the availability and feasibility of retreat when evaluating the reasonableness of the defendant's use of force. See WIS JI-CRIMINAL 810 (2001).[3] In contrast, the castle doctrine modification instructs the jury not to consider whether the defendant had an opportunity to retreat. See WIS JI-CRIMINAL 805A (2013).[4]
¶9 The circuit court agreed to instruct the jury regarding self-defense, but declined to issue the castle doctrine modification on the ground that there was no evidence that the victim was attempting to forcibly enter Brown's dwelling. After the jury convicted him of first-degree reckless injury, Brown moved for a new trial, arguing (among other things) that the circuit court erred in refusing to instruct the jury on the castle doctrine. The circuit court denied Brown's motion, on the ground that Brown had not produced sufficient evidence to warrant the instruction. The circuit court further determined that any error in failing to issue the instruction was harmless.
¶10 In its brief to this court, the State concedes that there was some evidence to warrant the castle doctrine instruction. Specifically, the State concedes that Brown's testimony that the victim reentered Brown's driveway carrying two sticks is evidence that the victim unlawfully entered Brown's driveway. For the purposes of the castle doctrine, a driveway falls within the definition of a dwelling. See WIS. STAT. § 939.48(1m)(a)1. (adopting the definition of dwelling in WIS. STAT. § 895.07(1)(h) ) and WIS. STAT. § 895.07(1)(h) (" 'Dwelling' includes other existing structures on the immediate residential premises, such as driveways, sidewalks, swimming pools, terraces, patios, fences, porches, garages, and basements.") Thus, the State concedes that the circuit court should have instructed the jury to use WIS JI-CRIMINAL 805A if the jury determined that the victim had unlawfully entered Brown's driveway at the time of the stabbing.
¶11 We accept the State's concession that there was evidence to support the regular self-defense instruction, WIS JI-CRIMINAL 810, and the castle doctrine modification instruction, WIS JI-CRIMINAL 805A. Specifically, the circuit court should have instructed the jury to use the regular instruction if the jury found that the victim had not unlawfully entered Brown's driveway at the time of the stabbing, or, alternatively, that the jury should follow the castle doctrine modification instruction if the jury found that the victim had unlawfully entered Brown's driveway at the time of the stabbing.
¶12 We therefore proceed to the question of whether the circuit court's error in not including the castle doctrine instruction was harmless. See State v. Stietz , 2017 WI 58, ¶ 61, 375 Wis. 2d 572, 895 N.W.2d 796 (an error in refusing to instruct the jury on a requested defense instruction is subject to the harmless error rule). An error is harmless "if it is clear beyond a reasonable doubt that a rational jury would have come to the same conclusion absent the error." Id ., ¶ 63.
¶13 The circuit court addressed harmless error and we agree with its conclusion that, beyond reasonable doubt, a rational jury would have found Brown guilty of first-degree reckless injury, even if the jury had been given the option of using the castle doctrine instruction. The circuit court correctly reasoned that, in order to use the castle doctrine instruction, the jury would have to believe Brown's version of events, in which Brown stabbed the victim after the victim ran up the driveway to attack Brown. And, we agree with the circuit court that no reasonable jury could have believed Brown's version of events. One eyewitness described Brown as the clear aggressor, brandishing a knife as he advanced down his driveway toward the victim, while the victim backed into the cul-de-sac and tried to use sticks to defend himself. Then, as the two men faced off, Brown was the one who swung first. This version of events was confirmed to police by a neighbor who watched the scene unfold from his upstairs window.[5]
¶14 Brown argues that there was evidence from which the jury could have found that "there was a reasonable probability that [the victim] ran up the driveway to attack Brown." However, the circuit court found Brown's version of events "to be completely incredible based on the uncontroverted physical evidence and statements made by all of the other witnesses."
¶15 Brown argues that, in reaching this determination, the circuit court improperly weighed the evidence at trial. Brown relies on our supreme court's decision in Stietz, in which the court determined that a defendant was entitled to a new trial due to the circuit court's failure to give a self-defense instruction. Id. , ¶¶ 67-70. The court explained that even though the defendant's "testimony was not always consistent and ... was contradicted," nonetheless "the defendant's version of the events, sometimes supported on specific points by [other testimony], provided an adequate factual basis" to support a jury finding that he acted in self-defense. Id. , ¶ 23. We disagree that Stietz helps Brown, because the circuit court found Brown's testimony "completely incredible" as opposed to inconsistent or contradicted.
¶16 In addition, the circuit court's determination that Brown's testimony was incredible is supported by the physical evidence. Specifically, Brown testified that he grabbed the knife in self-defense after the victim came from the middle of the cul-de-sac and up the driveway toward Brown, who was standing at the top of the driveway throwing wood. However, officers found the victim lying in the street, past the bottom of the driveway, in a pool of blood. No blood was found in Brown's driveway.
¶17 Brown argues that the absence of any blood in the driveway is not significant because the blood only shows where the victim collapsed, and not where the victim was stabbed. According to Brown, the victim could have taken "a few steps down the driveway" after being stabbed, before collapsing in the street. However, the distance from the top of the driveway to the street, is plainly more than "a few steps." We agree with the circuit court that it is incredible to believe that a victim with an eight-inch knife blade in his skull could travel back down Brown's driveway, and then collapse in the street in a pool of blood, without leaving any trace of blood in the driveway. In addition, both eyewitnesses who saw the stabbing described the victim as collapsing immediately after being stabbed.
¶18 Brown also contends that one of the witnesses at trial, Cynthia Harms, corroborated his testimony that the stabbing occurred in the driveway. Harms testified that she was awoken by yelling and looked out her upstairs window. Although it was "very dark out," Harms saw "shadows going toward the tree and the [car]" in Brown's driveway. Harms testified that she could tell there was a fight because she heard yelling and glass breaking, at which point she left the window to call 911. Harms told the 911 operator that she could not see what was happening because trees were blocking her view.[6] Harms also told a detective shortly after the incident that she did not see what happened.
¶19 At trial, Harms testified that the scuffling occurred between the tree on Brown's property and the car parked in his driveway. Brown argues that this testimony corroborates his version of events. But the problem is that Harms made clear that she only heard sounds of fighting, but she did not see fighting. Harms testified that she was "not there present" for the fighting because she was already calling 911. In addition, when asked directly if she saw "any sort of altercation or fight" in the driveway, she said, "No."[7] The circuit court concluded that Harms's testimony contradicted Brown's version of events. Although that conclusion may overstate the impact of Harms's ambiguous testimony, Harms repeatedly stated that she did not actually see what happened when the victim was stabbed, so her testimony does nothing to corroborate Brown's assertion that he stabbed the victim after the victim ran up the driveway brandishing sticks.
¶20 Brown also points out that Harms testified that she saw the victim collapse after walking from the sidewalk at the bottom of the driveway toward his car, which was parked halfway across the driveway. But this testimony is largely consistent with the prosecution's version of events and does not help Brown establish that Brown stabbed the victim after the victim ran up the driveway to attack Brown. In sum, nothing in Harms's testimony makes Brown's incredible version of events any more credible.
¶21 Brown also contends that his acquittal on the attempted first-degree intentional homicide charge shows that the jury did not believe the prosecution's version of events. Based on this assumption, Brown argues that a properly instructed jury would likely have believed his version of events and would therefore have acquitted him. See id. , ¶ 64 (explaining that the jury's split verdict "suggest[s] that the jury believed all or some of the defendant's testimony and ... might have acquitted the defendant" on additional charges if properly instructed on self-defense). We disagree that Brown's assumption is a logical interpretation of his acquittal on the attempted homicide charge. Instead, the more likely explanation is that the jury did not find beyond reasonable doubt that Brown acted with the necessary intent to kill the victim.
¶22 Finally, in his reply brief, Brown argues that the State's concession that there was "some evidence" to support the castle doctrine instruction compels the conclusion that the failure to so instruct the jury was not harmless error. Brown contends that as long as there was evidence to give the instruction, there must be evidence from which a jury could find in his favor under the instruction. See Neder v. United States , 527 U.S. 1, 19 (1999) (an error is not harmless "where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding").
¶23 Brown's argument fails to come to terms with the limited nature of the State's concession. According to the Wisconsin Criminal Jury Instructions Committee, the circuit court should issue the castle doctrine instruction when there is some evidence, viewed in the light most favorable to the defendant, to support three predicate facts.[8] See WIS JI-CRIMINAL 805A, at 8. Thus, when the State conceded that the instruction should apply, it was conceding that Brown's testimony, viewed in the light most favorable to Brown, supported the predicate facts. However, the question of whether there is "some evidence," viewed in the light most favorable to Brown, is different from whether a jury could reasonably believe Brown's testimony in light of all of the testimony and physical evidence at trial. Here, we agree with the circuit court that it is "beyond a reasonable doubt that a rational jury would have come to the same conclusion absent the error," which means that the error was harmless. Stietz , 375 Wis. 2d 572, ¶ 63.
B. Did Brown Receive Ineffective Assistance of Counsel?
¶24 Brown argues that he received ineffective assistance of counsel due to his attorney's failure to capitalize on language in State v. Miller , 2009 WI App 111, 330 Wis. 2d 724, 772 N.W.2d 188. In Miller , we explained that an action taken by a defendant to protect himself or others is "inconsistent with conduct evincing utter disregard" for human life. Id. , ¶ 40. Because conduct evincing an utter disregard for life is a necessary element for first-degree reckless injury, see WIS. STAT. § 940.23(1)(a),[9] Brown argues that he might have been acquitted if his attorney had made use of Miller , either in closing argument or by requesting a jury instruction incorporating its language.
¶25 To establish ineffective assistance of counsel a defendant must show that counsel's performance was deficient and that such performance prejudiced his defense. See Strickland v. Washington , 466 U.S. 668, 687 (1984). We need not address both components of the analysis if a defendant makes an inadequate showing on one. Id . at 697.
¶26 The circuit court denied Brown's postconviction motion for a new trial after a hearing, determining that his attorney's performance was neither deficient nor prejudicial. Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact. See State v. Alexander , 2015 WI 6, ¶ 15, 360 Wis. 2d 292, 858 N.W.2d 662. "We uphold a circuit court's factual findings unless they are clearly erroneous." Id . "[T]he circumstances of the case and the counsel's conduct and strategy" are considered findings of fact. State v. Jenkins , 2014 WI 59, ¶ 38, 355 Wis. 2d 180, 848 N.W.2d 786. "However, whether counsel's performance was deficient and whether a defendant was prejudiced thereby, present questions of law that we review independently." Alexander , 360 Wis. 2d 292, ¶ 15.
¶27 In determining that the performance of Brown's trial attorney was not deficient, the circuit court determined that Brown's trial attorney was "extremely effective" throughout trial, and particularly in closing argument. The court further found that the defense attorney's decision about how best to argue self-defense rested on "sound strategy," and the attorney had consulted with Brown about that strategy in advance of trial. Moreover, the circuit court explained that Brown's argument misapplied the holding of Miller , which considers the totality of the circumstances in determining whether a defendant acted with utter disregard for human life. See Miller , 320 Wis. 2d 724, ¶ 34 ("In evaluating whether there is sufficient proof of utter disregard for human life, we consider ... 'whether the totality of the circumstances showed any regard for the victim's life.' " (quoted source omitted) ).
¶28 Brown concedes that his attorney was excellent, and was able to convince the jury to acquit Brown of the more serious charge of attempted homicide "under difficult circumstances." Nonetheless, Brown argues that his attorney's failure to call attention to Miller made it easier for the prosecution to satisfy its burden of proof for the reckless injury charge. He contends that this was a mistake that prejudiced him. See State v. Thiel , 2003 WI 111, ¶ 60, 264 Wis. 2d 571, 665 N.W.2d 305 ("a single mistake in an attorney's otherwise commendable representation may" constitute deficient performance).
¶29 We disagree with Brown's assertion that his otherwise excellent attorney rendered deficient performance by failing to specifically argue Miller . See Strickland , 466 U.S. at 690 (performance is deficient if it falls "outside the wide range of professionally competent assistance"). Miller involved a defendant who was convicted of first-degree reckless injury after shooting a highly intoxicated houseguest who was behaving erratically and violently. Miller , 320 Wis. 2d 724, ¶¶ 8, 13, 15. Prior to the shooting, the victim slapped Miller twice, threatened him with a screwdriver twice, shoved and slapped another occupant of the home, smashed a guitar, and harassed and threatened other people in the home. Id. , ¶¶ 5-10. Miller testified that he shot the victim in order to prevent further harm, and that he aimed at the victim's thigh. Id. , ¶ 13. One minute after shooting the victim, Miller called 911 to report it. Id. , ¶ 14.
¶30 A jury found Miller guilty of first-degree reckless injury while armed with a dangerous weapon and aggravated battery while armed with a dangerous weapon. Id. , ¶ 15. The circuit court subsequently granted Miller's motion for a new trial on the grounds of ineffective assistance of counsel. Id. , ¶¶ 17-18. Specifically, Miller's trial attorney failed to argue that the evidence was insufficient to establish that Miller's conduct showed an "utter disregard for human life." Id. , ¶ 18. On appeal, we explained that the question of whether a defendant has exhibited an utter disregard for human life requires a court to consider the totality of the circumstances. Id. , ¶ 34. We concluded that "the evidence, viewed in the light most favorable to the conviction, demonstrates that Miller showed some regard for human life." Id. , ¶ 44. Because the evidence was insufficient to convict Miller, we remanded the matter to the circuit court to enter a judgment of acquittal. Id.
¶31 The specific language from Miller on which Brown relies was part of our examination of the totality of the circumstances surrounding Miller's decision to shoot the victim. Specifically, we noted that there was undisputed evidence that Miller was acting to defend himself and his friends. Id. , ¶ 40. We explained that this undisputed evidence was "inconsistent with conduct evincing utter disregard." Id. Brown seizes on this phrase to argue that if the jury determined that he acted in self-defense (even unreasonably), then the jury would be required to acquit him of first-degree reckless injury. Brown's argument stretches this isolated quote from Miller beyond what it can reasonably bear: our explanation that self-defense is inconsistent with utter disregard does not mean that self-defense is antithetical to utter disregard. To the contrary, our supreme court has since explained that "when evaluating whether a defendant's conduct reflects utter disregard for human life, the fact-finder should examine the totality of the circumstances surrounding the crime." State v. Burris , 2011 WI 32, ¶ 41, 333 Wis. 2d 87, 797 N.W.2d 430.
¶32 Moreover, Miller is distinguishable on its face because it involved "undisputed" evidence that the defendant had acted in self-defense. Miller , 320 Wis. 2d 724, ¶ 40. In contrast, the present case involves ample evidence that Brown was the primary aggressor in his confrontation with the victim. Thus, instructing the jury that self-defense is inconsistent with an utter disregard for human life would encourage the jury to give undue weight to Brown's testimony. But this in turn would run afoul of our supreme court's command that jurors consider the totality of the circumstances in determining whether the defendant's conduct evinces an utter disregard for human life. See Burris , 333 Wis. 2d 87, ¶ 40 ("[A]n instruction to consider the totality of the circumstances, i.e., not giving undue weight to any particular evidence, applied along with the jurors' common sense, will allow the jury to fairly and appropriately apply the instruction and follow the law.").
¶33 For these reasons, we conclude that Brown's trial attorney was not deficient for failing to capitalize on our isolated language in Miller . We can therefore reject Brown's ineffective assistance of counsel claim. See Strickland , 466 U.S. at 697 (we need not address both components of the analysis if defendant makes an inadequate showing on one).
C. Did the Circuit Court Err in Excluding Three Incidents Involving the Victim's Use of a Shotgun?
¶34 Brown contends that the circuit court erroneously excluded evidence regarding the victim's violent character, known as "McMorris evidence." See McMorris v. State , 58 Wis. 2d 144, 152, 205 N.W.2d 559 (1973) ("When the issue of self-defense is raised in a prosecution for assault or homicide and there is a factual basis to support such defense, the defendant may, in support of the defense, establish what the defendant believed to be the turbulent and violent character of the victim by proving prior specific instances of violence within his knowledge at the time of the incident."). Before trial, Brown filed an offer of proof regarding his fear of the victim based on Brown's knowledge of the victim's past instances of violent conduct. The circuit court allowed Brown to present evidence that he was aware that the victim had been in several prior fights.
¶35 However, the court excluded Brown's testimony about three incidents in which the victim told Brown that he had used or threatened to use a shotgun. The first incident involved a domestic violence situation ten years earlier, in which the victim punched his wife and shot at his car. The second incident involved the victim's plan to use a shotgun to confront a person who had robbed him during a drug deal, also ten years earlier. The third incident involved the victim's report to Brown, one year earlier, that the victim had pulled out a shotgun during a confrontation with a neighbor and threatened to use it.
¶36 A circuit court's decision to exclude evidence is reviewed for erroneous exercise of discretion. State v. Schmidt , 2016 WI App 45, ¶ 41, 370 Wis. 2d 139, 884 N.W.2d 510. "Admissibility [of McMorris evidence] is not automatic." State v. Head , 2002 WI 99, ¶ 128, 255 Wis. 2d 194, 648 N.W.2d 413. "The evidence should be probative of the defendant's beliefs in relation to [his or] her defense." Id. , ¶ 129.
¶37 Here, the circuit court explained that it was excluding evidence as to all three incidents because "there's no question that there was no gun involved" at the time Brown stabbed the victim. The court also noted that domestic violence involves a different dynamic than other sorts of fights, that testimony regarding the victim's involvement in a drug deal was "way too prejudicial to come in," and that the incident with Brown's neighbor did not involve any sort of physical fight.
¶38 Brown argues that the circuit court erred in not admitting these three incidents, because they show the victim's violent character and why Brown "reasonably believed that he would be the 'victim' if he did not act to defend himself." See McMorris , 58 Wis. 2d at 151 (evidence of the victim's violent character "enlightens the jury on the state of [the defendant's] mind at the time of the affray, and thereby assists them in deciding whether he acted as a reasonably prudent person would under similar beliefs and circumstances"). Brown further argues that the court did not properly weigh the probative value of the evidence against the danger of unfair prejudice. See WIS. STAT. § 904.03 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice ....").
¶39 Neither argument convinces us that the circuit court erroneously exercised its discretion. In particular, Brown fails to convince us that incidents in which the victim used or threatened to use a shotgun would help enlighten the jury about Brown's state of mind at the time of the stabbing. To the contrary, Brown's immediate fear of the victim stemmed from the fact that the victim was wielding sticks. Brown was able to introduce ample evidence about the victim's propensity for violence that related to this immediate threat. However, Brown does not dispute the circuit court's determination that there was no gun involved in the altercation that led to the victim's stabbing. We therefore agree that the episodes involving a shotgun are not relevant to Brown's state of mind at the time of the stabbing. Accordingly, we conclude that the circuit court properly exercised its discretion in concluding that the three incidents involving a shotgun were irrelevant and prejudicial.
CONCLUSION
¶40 For the foregoing reasons, we affirm the judgment of conviction and the order denying postconviction relief.
By the Court. -Judgment and orders affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

Brown's notice of appeal also referred to a circuit court order modifying restitution. Brown does not raise any issue regarding restitution so we do not address this order.

Wisconsin Stat. § 939.48(1m) provides in relevant part:
(ar) If an actor intentionally used force that was intended or likely to cause death or great bodily harm, the court may not consider whether the actor had an opportunity to flee or retreat before he or she used force and shall presume that the actor reasonably believed that the force was necessary to prevent imminent death or great bodily harm to himself or herself if the actor makes such a claim under sub. (1) and either of the following applies:
1. The person against whom the force was used was in the process of unlawfully and forcibly entering the actor's dwelling, motor vehicle, or place of business, the actor was present in the dwelling, motor vehicle, or place of business, and the actor knew or reasonably believed that an unlawful and forcible entry was occurring.
2. The person against whom the force was used was in the actor's dwelling, motor vehicle, or place of business after unlawfully and forcibly entering it, the actor was present in the dwelling, motor vehicle, or place of business, and the actor knew or reasonably believed that the person had unlawfully and forcibly entered the dwelling, motor vehicle, or place of business.
All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

All references to Wis JI-Criminal 810 are to the 2001 version unless otherwise noted.

All references to Wis JI-Criminal 805A are to the 2013 version unless otherwise noted.

The neighbor testified at trial that he did not remember what he saw or what he told police. However, the detective who interviewed this neighbor immediately after the stabbing testified that the neighbor reported seeing Brown walk toward the victim, who was in the street, and then strike him in the head, causing the victim to collapse.

Brown argues that we should disregard this statement, because it came in response to the operator's specific question about whether Harms could identify the gender of the victim. Brown further points out that Harms initially looked out of her upstairs window, which had an unobstructed view, but was looking out of her downstairs window when she called 911. These additional facts do not lend additional credibility to Harms's testimony, especially in light of Harms's unequivocal statements that she did not see the fighting.

Brown further argues that, with this straightforward denial, Harms was merely quibbling about the meaning of the word "driveway." Brown suggests that if the question had been phrased differently, Harms would have admitted that she saw the altercation. But Harms specifically denied this as well, testifying that "[w]hatever happened from that tree to that driveway, I didn't see anything because I was on the phone, grabbing my phone to call 911."

In this case, the three predicate facts are: (1) that the victim was in the process of forcibly entering Brown's dwelling; (2) that Brown was present in the dwelling; and (3) Brown knew or reasonably believed that the victim was forcibly entering his dwelling. See Wis JI-Criminal 805A, at 8.

Wisconsin. Stat. § 940.23(1)(a) provides as follows: "Whoever recklessly causes great bodily harm to another human being under circumstances which show utter disregard for human life is guilty of a Class D felony."