COURT OF APPEALS
DECISION
DATED AND FILED

March 31, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2470-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF2310

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RODNEY D. ROBBINS,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: J.D. WATTS, Judge. *Affirmed*.

Before White, C.J., Colón, P.J., and Donald, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Rodney D. Robbins appeals the judgment convicting him of first-degree intentional homicide with the use of a dangerous weapon. *See* WIS. STAT. §§940.01(1)(a) & 939.63(1)(b) (2023-24).[1]  He argues that the trial court erred in excluding: (1) evidence that Robbins thought the victim and members of his gang thought he was a "snitch" and wanted to kill him; (2) expert testimony on the impact past trauma has on the reactions people have to later violent situations; and (3) testimony of the victim's reputation in the community from a police officer who had investigated numerous incidents involving the victim and his gang.  For the reasons that follow, we affirm.

## BACKGROUND

¶2      Robbins was charged with first-degree intentional homicide with the use of a dangerous weapon following the death of L.Z. Jolly.  According to the complaint, security video footage of the front entrance to Warren's Lounge on North Hopkins Street in Milwaukee showed Jolly confronting Robbins as Robbins attempted to enter Warren's Lounge.  The video showed Jolly "leaning forward in an aggressive manner and at various different times putting his hands on [Robbins] or pushing him."  As the confrontation continued, Robbins pulled "something from his waist," which caused Jolly and other bystanders to put their hands in the air.  The security video then showed Robbins shooting Jolly in the back, causing him to fall face first.  It later showed Robbins standing over Jolly and shooting him multiple times.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version. For ease of reference, we cite to the current version because there have been no changes to the relevant language from the 2019-20 version in effect at the time of the crime.

¶3    Robbins pled not guilty, and the case went to trial. Robbins admitted that he shot Jolly but claimed that he did so in self-defense. Robbins testified that he knew Jolly since childhood and that Jolly was not only a high-ranking member of the Brothers of Struggle ("BOS") street gang but also had a reputation for violence. According to Robbins, on the night of the shooting, Jolly pushed him and said, "You dead down here on Hopkins." Jolly then flashed gang signs, which Robbins testified meant Jolly was going to kill him, and said, "You know you really dead," after which Robbins pulled out his gun. Robbins testified that he was scared of Jolly and, even after Jolly fell after the first shot, he continued to fire the gun in a "panic moment" because he knew that if Jolly got up, Jolly would "get" him.

¶4    In support of his defense, Robbins filed a motion to introduce *McMorris*[2] and other acts evidence. As relevant here, Robbins sought to introduce evidence that he was aware that Jolly was a high-ranking member of the BOS gang and that Robbins was "aware that, for years, Mr. Jolly and other BOS members under his rank were going to kill him because they believed that Mr. Robbins was a 'snitch.'"

¶5    The trial court allowed Robbins to testify that he knew Jolly was a member of BOS, but excluded the proffered testimony about whether Jolly and his fellow gang members wanted to kill Robbins. The court determined:

---

[2] *See McMorris v. State*, 58 Wis. 2d 144, 152, 205 N.W.2d 559 (1973) (discussing that when a defendant has a factual basis to support a claim of self defense "the defendant may, in support of the defense, establish what the defendant believed to be the turbulent and violent character of the victim by proving prior specific instances of violence within his knowledge at the time of the incident").

THE COURT: The Court has listened to the discussion. The Court agrees [that] the State is not objecting to the first piece of evidence that the defendant knew the victim was a member of Brothers of Struggle … and if it was sufficiently raised, the Court would allow it.

Regarding the second item of evidence or the categorization of the information, I agree strongly with the State. First of all, this information is beliefs of others. And this immediately takes it out of the direct definition of *McMorris* because we're primarily dealing with what the defendant knew. But even if one were to say these beliefs of others might constitute *McMorris*, it's still speculation. That is, it's not sufficiently defined or raised. And even if it were *McMorris* evidence and sufficiently raised, the Court agrees with the State again that [WIS. STAT. §] 904.03 would keep it out because it doesn't meet the balancing test of its probative value against the unfair prejudice and confusion of the issues.

And the State argues correctly that the unfair prejudice here is to have the jury take this piece of evidence and evaluate it in a way that gives it probative value that it doesn't have to start with and that it's unfair in that it creates this emotion or emotional kind of situation and that the jurors would place improper weight and decide the case on an improper basis. Then the State's argument that this is a confusion of issues and the trial within a trial, the Court agrees with that.

So the second piece is not allowed and the first piece is.

¶6      In addition, Robbins sought to introduce the testimony of retired criminology professor John M. Hagedorn, Ph.D. Dr. Hagedorn would have testified about the reactive behaviors of victims of past gang violence when confronted by a known gang member. Dr. Hagedorn would have testified that: Robbins, having been a victim of past gang violence, acted impulsively, not intentionally, when he shot Jolly; his violent reaction was precipitated by Jolly; and Robbins shot Jolly seven more times after the first shot because he panicked.

¶7 The trial court excluded Dr. Hagedorn's testimony because Wisconsin law prohibits an expert from rendering an opinion as to the defendant's state of mind when he committed the crime.

> THE COURT: To resolve the defense request and the State objection to Dr. Hagedorn's testimony the Court will review the ***Daubert***[3] checklist that's been so helpful to the Court.
>
> ….
>
> So the first question is, is the testimony relevant? Does it go to a proposition of consequence in the action? And then if it does, is it probative? Does it make that proposition more probable or less probable?
>
> And here as the Court discussed at length previously and as the State argued strongly today that this testimony cannot begin to satisfy relevance because the law defines much of it as legally impermissible. And legally impermissible evidence is irrelevant.
>
> So the State argues, and … the Court agrees that some of the proposed testimony of Dr. Hagedorn is [Robbins'] state of mind. This idea that based on social science Dr. Hagedorn can define certain reactions of victims of gang violence. And then looking at what he was told happened here he can define the defendant's behavior as expressive versus intentional. And of course this is all impermissible state of mind evidence[.]

¶8 The trial court also determined that Dr. Hagedorn was not qualified to render an opinion as to why Robbins reacted the way he did, and his testimony would not have assisted the jury in reaching its verdict.

> So a lot of what Dr. Hagedorn was or had in his report has been excluded for obvious reasons. It isn't relevant legally.

---

[3] *See **Daubert v. Merrell Dow Pharm., Inc.***, 509 U.S. 579, 592-93 (1993) ("Faced with a proffer of expert scientific testimony … the trial judge must determine at the outset … whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.").

There is an argument that the Court entertained that Dr. Hagedorn might be able to testify expositionally regarding certain bits of evidence. And expositional testimony is evidence that's helpful to a jury and is explained in a lecture format as a professor might explain to a class[.]

However, even if the Court were to allow expositional testimony, the Court has severe difficulties with Dr. Hagedorn's proposed testimony and here's why. The second question in the *Daubert* checklist is, and of course this now assumes that the exposition testimony of Dr. Hagedorn would be relevant, and I'll just assume that for the sake of argument.

But the second argument is, is the testimony within the jury's ken? That is, does the jury know it or not? Often this question has been presented by proponents of exposition testimony that jurors may have an erroneous belief that would harm the proponent's case, and that the testimony is to correct an erroneous belief about something that's important in the case. And the very simple way of asking this question is, is it helpful to the jury? And when I listened to Dr. Hagedorn's testimony last time and he explained that he did from a social science point of view in an expositional way would be able to testify about reactive behaviors of individuals exposed to gang violence. And his answer was consistent with this Court's general knowledge of trauma victims.

However, specific testimony was not helpful and is in this Court's view something every juror would have common sense about. For example, he said not all people react in the same way. And he was talking about Carl Bell's work … into PTSD reactions when individuals Carl Bell was studying had been exposed to gang violence. And Dr. Hagedorn's first point was people react differently. Not everyone reacts the same way. And even said not one specific way. But he said victims of gang violence often had this trauma response. They had fear of location. They had fear of people. And he indicated that victims of gang violence might fearful based on their earlier experience. That this response is an emotional one, not rational. And that he even said that he had seen victims of gang violence who were able to recall specific details of homicides or murders that they had witnessed as sort of proof that this was a traumatic experience and that it enhanced their memory.

But none of this expositional testimony is really very helpful. As I said, the Court was familiar with it. When I

6

heard it last time, I expected Dr. Hagedorn today to become very specific and say that this had been refined in some way or that there were additional conclusions that were there. But I didn't hear any of that today. And I don't believe he offered it.

So the second checklist question isn't answered by defense because it's not helpful to the jury. It's already something they know in their common sense knowledge. That is, people who have been traumatized run away as he said today. Sometimes they're aggressive. And that's pretty generalized stuff that I think most people could figure out even without social science assistance. So it's not helpful to the jury.

¶9     Robbins also sought to introduce the testimony of Detective Erik Villareal regarding Jolly's reputation for violence in the community. Detective Villareal, who served with the Milwaukee Police Department (MPD) for 27 years, would have testified that: he had knowledge, from his experience as an MPD officer and detective, about the community to which Jolly belonged; Jolly had a reputation for violence; and he knew of Jolly's reputation.

¶10     The trial court excluded the evidence for numerous reasons. The court determined that: Robbins failed to establish a proper foundation; the testimony would have been cumulative to the reputation evidence already allowed;[4] and its limited probative value would be outweighed by the potential to prejudice the jury with propensity evidence.

¶11     A jury found Robbins guilty. He appeals.

---

[4] Robbins introduced the testimony of Terrance Thomas to establish that Jolly had a reputation in the community for violence. Robbins himself also testified about Jolly's reputation for violence.

**DISCUSSION**

¶12    Robbins presents three arguments on appeal.  He argues that the trial court erred in excluding: (1) evidence that Robbins thought the victim and members of his gang thought he was a "snitch" and wanted to kill him; (2) Dr. Hagedorn's testimony on the impact past trauma has on the kinds of reactions people have to later violent situations; and (3) Detective Villareal's testimony regarding Jolly's reputation in the community.

¶13    Our standard of review for each of these issues is the same.  We will not disturb a trial court's decision to admit or exclude evidence unless the trial court erroneously exercised its discretion.  *Weborg v. Jenny*, 2012 WI 67, ¶41, 341 Wis. 2d 668, 816 N.W.2d 191.  Likewise, we review the trial court's decision to admit or exclude expert testimony for an erroneous exercise of discretion.  *State v. Giese*, 2014 WI App 92, ¶16, 356 Wis. 2d 796, 854 N.W.2d 687.  Also, the trial court's decision to admit or exclude evidence of a victim's reputation for violence or specific violent acts is discretionary.  *See State v. Jackson*, 2014 WI 4, ¶¶41, 43, 352 Wis. 2d 249, 841 N.W.2d 791.

¶14    Under the erroneous exercise of discretion standard, we will not overturn the trial court's exercise of discretion if the decision had a reasonable basis and was made in accordance with the proper legal standard and the facts in the record.  *State v. Dobbs*, 2020 WI 64, ¶32, 392 Wis. 2d 505, 945 N.W.2d 609.  "This standard is highly deferential: we will search the record for reasons supporting the trial court's decision, and we will sustain a ruling even where we disagree with it, so long as appropriate discretion was exercised."  *State v. Hogan*, 2021 WI App 24, ¶26, 397 Wis. 2d 171, 959 N.W.2d 658.

¶15     Turning to Robbins' first argument, we conclude that the trial court properly exercised its discretion when it excluded evidence that Robbins thought Jolly and members of his gang thought he was a "snitch" and wanted to kill him. Robbins claims that he knew prior to the shooting that Jolly "believed he was a snitch" and that he should have been allowed to testify about this belief, but he offers no evidence explaining how he knew this or when he came to have that understanding. In other words, no foundation has been laid. Therefore, the trial court did not err in determining, as detailed above, the proffered testimony was speculative and "not sufficiently defined or raised." Moreover, the trial court properly exercised its discretion in determining "that [WIS. STAT. §] 904.03 would keep it out because it doesn't meet the balancing test of its probative value against the unfair prejudice and confusion of the issues." Because the trial court properly exercised its discretion, we sustain the ruling.

¶16     Turning next to Robbins' second argument, we conclude that the trial court properly exercised its discretion by prohibiting Dr. Hagedorn from testifying. Robbins disagrees with the trial court's determination that Dr. Hagedorn's testimony was impermissible "state of mind" testimony, claiming that his testimony would have instead helped the jury understand the reasonableness of his belief that "he was in grave danger when he shot and killed Mr. Jolly." Robbins also argues that, contrary to the trial court's determination, Dr. Hagedorn's testimony would have been helpful to the jury on multiple levels. But while Robbins disagrees with the trial court's ruling, he does not dispute that there was in fact a reasonable basis for the trial court's decision, nor does he argue that the trial court failed to act "in accordance with the proper legal standard and the facts in the record." *See Dobbs*, 392 Wis. 2d 505, ¶32. As set forth in detail above, the trial court carefully applied the *Daubert* factors in reaching its well-

9

reasoned decision to exclude Dr. Hagedorn's testimony. Therefore, we will sustain its ruling.

¶17 Finally, we turn to Robbins' argument that the trial court erred in excluding Detective Villareal's testimony about Jolly's reputation in the community. As noted, the trial court excluded the testimony because: Robbins failed to establish a proper foundation; the testimony would be cumulative to the reputation evidence already allowed; and its limited probative value would be outweighed by the potential to prejudice the jury with propensity evidence. Robbins argues that the testimony was not cumulative because only two other witnesses testified regarding Jolly's reputation for violence. He also argues the testimony would not have been unfairly prejudicial because having a detective "who had investigated numerous incidents involving Mr. Jolly and BOS would have lent credibility to [his] claim of self-defense."

¶18 We conclude that the trial court properly exercised its discretion with regard to Detective Villareal's testimony. First, Terrance Thomas, who went to the same school as Jolly and who knew him through the community and personal interactions, testified regarding Jolly's reputation for violence in the community. Second, Robbins himself not only testified about Jolly's reputation, but was also permitted to testify at length about specific acts that the court allowed. As the State notes, Robbins testified to the following without objection: his sister was murdered by the BOS gang years earlier; Robbins knew that Jolly was a member of the BOS gang at the time of the shooting; Jolly had a reputation for violence; Robbins knew that Jolly was involved in a 1999 shooting at Maxine's Lounge; Robbins saw Jolly shoot at Trenton Gray and "Blue" in 1998, and he saw Jolly shoot at Kevin Taylor; Hasani Gant told Robbins that Jolly shot Gant in the back; Robbins was aware that Jolly shot and killed Lonnie Crowder

during a robbery; Robbins was aware that Jolly murdered Anthony Blackmon in 2004; and he knew that Jolly opened fire on Terrance Thomas in 1992 or 1994, missing Thomas but hitting several of Thomas's friends. Given this testimony, we cannot conclude that the trial court erroneously exercised its discretion in determining that Detective Villareal's testimony would have been cumulative and that the unfair prejudice of this testimony would have outweighed its probative value.

## CONCLUSION

¶19 As detailed above, the trial court properly exercised its discretion when it excluded evidence related to Jolly's prior violent conduct, Dr. Hagedorn's expert testimony, and Detective Villareal's testimony about Jolly's reputation for violence.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

11