COURT OF APPEALS
DECISION
DATED AND FILED

July 31, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2023AP1916-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CF648

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

CRAIG W. HOLTZ,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Manitowoc County: JERILYN M. DIETZ, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Craig W. Holtz appeals from a judgment, entered on his guilty plea, convicting him of first-degree reckless homicide. He also appeals from an order denying postconviction relief. On appeal, Holtz argues he should be permitted to withdraw his plea because trial counsel was ineffective in his handling and explanations to Holtz of self-defense, *McMorris*[1] evidence, and lesser-included offenses. He also argues plea withdrawal is necessary because the circuit court's plea colloquy did not specifically inquire into Holtz's understanding of this information and therefore his plea was not knowingly, voluntarily, and intelligently entered. We reject Holtz's arguments and affirm.

## BACKGROUND

¶2 Holtz stabbed J.R.A.[2] multiple times killing him. According to the criminal complaint, Holtz arrived at an apartment where J.R.A. was present to return money after failing to obtain methamphetamine for another person. While Holtz and J.R.A. were listening to music in the living room, a witness heard Holtz and J.R.A. begin to argue and yell. The witness then saw them punching each other with closed fists. J.R.A. moved away from Holtz, and the witness saw J.R.A. bleeding and Holtz holding a knife. Holtz stated, "If you come towards me I'll stick you again." J.R.A. said, "He cut me in my heart." Holtz fled the scene and threw his knife in a river. Despite attempts at lifesaving measures, J.R.A. died

---

[1] *McMorris v. State*, 58 Wis. 2d 144, 205 N.W.2d 559 (1973). Under *McMorris*, when a defendant raises self-defense to a homicide and "there is a factual basis to support such defense, the defendant may ... establish what the defendant believed to be the turbulent and violent character of the victim by proving prior specific instances of violence within his knowledge at the time of the incident." *Id.* at 152.

[2] The parties have used the victim's initials instead of his name. We will do so as well for consistency and for the victim's family's privacy.

of his wounds. An autopsy revealed that J.R.A. had one stab wound to his chest, four stab wounds to his abdomen, and one stab wound to his left forearm. Among other things, the State charged Holtz with first-degree intentional homicide as a repeater and with the use-of-a-dangerous-weapon enhancer.

¶3 Pursuant to a plea agreement, the State amended the first-degree intentional homicide charge to first-degree reckless homicide and dropped the repeater and use-of-a-dangerous-weapon enhancer. Holtz pled guilty to the amended charge and the remaining charges along with charges in two other criminal matters were dismissed and read in.

¶4 During sentencing, Holtz's trial counsel argued the defense's version of events. Counsel emphasized that a witness told police that J.R.A. and Holtz were punching each other, but that J.R.A. was "getting the better of it" because he was larger than Holtz. Counsel argued "the knife is produced, not out of, I would say not out of rage or anger, the knife is eventually produced out of fear." Counsel continued:

> [Holtz] says he stabs [J.R.A.] once and he says I have a knife I'll stab you again, and he does as [J.R.A.] continues to strike him.
>
> ….
>
> [T]his wasn't a situation where Mr. Holtz walks in, sees [J.R.A.], and pulls out a knife and stabs him. There was a prelude to this and a build up to the crime here.

Counsel also emphasized that Holtz had accepted responsibility and pled—"[I]t could have gone to trial, I don't think [Holtz] would have got convicted of first degree. I think there was a good chance that he would have gotten convicted of the reckless homicide, that's what he [pled] guilty to."

3

¶5     Ultimately, the circuit court sentenced Holtz to twenty-five years of initial confinement and twenty years of extended supervision.

¶6     Holtz filed a postconviction motion alleging, in part, he was entitled to withdraw his plea. Specifically, Holtz argued he was entitled to plea withdrawal because trial counsel was ineffective for failing to "adequately inform Holtz of the law of self-defense, the use of '*McMorris* evidence' to support a self-defense argument and how lesser included offenses are reviewed by a jury in Wisconsin." Holtz also argued the circuit court's plea "colloquy did not inquire as to whether trial counsel discussed possible defenses with Holtz" or whether trial counsel "explained to Holtz the law concerning self-defense, '*McMorris* evidence', or that Holtz had, through counsel, the ability to request lesser included offenses to be submitted to the jury at trial." Holtz asserted he would not have pled to the amended charge of first-degree reckless homicide if he had known this information.

¶7     The circuit court held a *Machner*[3] hearing. At the hearing, trial counsel testified that "self defense was a big part of this case" and he "certainly discussed self defense" with Holtz. Counsel reviewed possible defense strategies with Holtz and "self defense would have been the defense if the case would have gone to trial."

¶8     Counsel also testified that he was aware of *McMorris* evidence. *McMorris* would have generally permitted Holtz to introduce at trial evidence of

---

[3] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). "A *Machner* hearing is '[t]he evidentiary hearing to evaluate counsel's effectiveness, which includes counsel's testimony to explain his or her handling of the case.'" *State v. Jackson*, 2023 WI 3, ¶1 n.1, 405 Wis. 2d 458, 983 N.W.2d 608 (citation omitted).

J.R.A.'s violent behavior as long as Holtz was aware of that behavior at the time of the homicide. Counsel asked Holtz if he had any knowledge of J.R.A.'s violent tendencies or prior violent nature. Holtz told counsel that J.R.A. had a reputation for fighting and Holtz described a fight that occurred when they were both in jail together. Counsel hired an investigator to go to the Manitowoc County Jail to interview a witness regarding the fight; however, the witness was uncooperative. Counsel did not do open records requests for police reports concerning J.R.A. or any violent behavior he committed against others. Counsel "certainly would have done more of an investigation if this case was going to proceed to trial" but noted "the case was set for a trial quite a way out from the plea." Counsel investigated everything Holtz asked him to investigate. Counsel testified he would have filed a motion to admit *McMorris* evidence if the case had proceeded to trial.

¶9 Counsel also discussed the lesser-included offenses to first-degree intentional homicide with Holtz and explained how they would work at trial. Holtz, through counsel, made an initial plea offer to the State to plead to an amended charge of second-degree reckless homicide, which is one of the lesser-included offenses. Counsel explained he would have reviewed the different types of homicides with Holtz prior to making that offer "because there would have had to be some discussion of how we're getting from intentional to second degree reckless." There was then back and forth email negotiations, and the parties settled on a plea to an amended charge of first-degree reckless homicide, which is another one of the lesser-included offenses. Holtz accepted that offer.

¶10 Counsel testified he recalled Holtz wanted the plea and sentencing to occur promptly and within a certain time frame. In the plea-negotiation email exchange between counsel and the State, which was admitted into evidence at the hearing, trial counsel advised the State that "Holtz would want to be sentenced no

5

later than the end of June [because] he does not want to go back to Manitowoc County Jail once his revocation sentence is over."[4]

¶11    In support of his postconviction motion, Holtz signed an affidavit that was admitted into evidence at the *Machner* hearing. In his affidavit, Holtz generally averred that trial counsel did not adequately inform him of the law of self-defense, the use of *McMorris* evidence to support a self-defense argument, and how lesser-included offenses were reviewed by a jury. At the *Machner* hearing, Holtz began by testifying that everything in the affidavit was true and correct.

¶12    Holtz then admitted that trial counsel talked to him about how his charge could be amended into something else. Holtz stated that trial counsel talked to him about what the State would have to prove for the homicide counts. On cross-examination, Holtz agreed that he discussed the various pretrial offers with trial counsel, including the pros and cons of each, and that he gave trial counsel permission to extend certain offers. Holtz agreed that he would have discussed lesser-included offenses with trial counsel during plea negotiations.

¶13    Holtz testified he tried to tell trial counsel what he knew about J.R.A. but trial counsel "basically said it was not important at the time." When asked what he knew about J.R.A., Holtz testified about the incident in the jail and said that while in the jail with J.R.A., J.R.A. "was talking about how he was in for being at the bar and beating on a cop, and other, you know, how he liked to go to bars and fight after he got drunk." Holtz also said J.R.A. threatened him on the

---

[4] Holtz was revoked from supervision in part for killing J.R.A.

street but Holtz did not immediately recognize him. Holtz never heard of *McMorris* evidence before he pled. Holtz testified that if he knew he could bring in evidence concerning J.R.A.'s violent behaviors at trial that he believed it would have changed his mind about whether to plead. Holtz admitted he provided trial counsel with the name of a witness to the altercation at the jail. He did not ask trial counsel to interview anyone else.

¶14 The circuit court denied Holtz's postconviction motion in a written decision. It found that trial counsel's testimony and email exchanges demonstrated that counsel knew self-defense was the major issue in the case. The circuit court found, based on trial counsel's and Holtz's testimony, that trial counsel "did, in fact, identify self-defense as an issue, discussed the possibility of amendments with his client, relied on self-defense in plea negotiations, and referred to it at sentencing." The circuit court also found that trial counsel explained the lesser-included offenses to Holtz, noting trial counsel testified that he explained the lesser-included offenses and "how they arrived at the strategy to offer a plea to Second Degree Reckless Homicide." The court concluded trial counsel was not deficient by failing to explain self-defense or the lesser-included offenses to Holtz or raise those issues in this case.

¶15 As to the *McMorris* evidence, the circuit court found that the evidence would only be relevant at a trial, that Holtz directed trial counsel to negotiate his case, and that those negotiations resulted in an agreement that Holtz accepted. The circuit court concluded trial counsel was not deficient for failing to file a motion to admit *McMorris* evidence.

¶16 The circuit court then analyzed and determined whether Holtz was prejudiced by trial counsel's purported deficiencies. Specifically, the court

considered whether, based on the record, Holtz would have received and succeeded with an instruction on perfect self-defense.[5] The court reasoned that, if Holtz would only have received imperfect self-defense, the penalty class would have been the same as the crime he pled guilty to, so he could not demonstrate prejudice. The circuit court found that Holtz had failed to demonstrate that he would have received or prevailed on a perfect self-defense claim.

¶17 The circuit court then determined that because Holtz and trial counsel discussed the various levels of homicide and self-defense, Holtz's plea was voluntary, and the plea colloquy was without a defect requiring plea withdrawal. Holtz appeals. Additional facts will be included below.

## DISCUSSION

¶18 "When a defendant moves to withdraw a plea after sentencing, the defendant 'carries the heavy burden of establishing, by clear and convincing evidence, that the trial court should permit the defendant to withdraw the plea to correct a manifest injustice.'" *State v. Cain*, 2012 WI 68, ¶25, 342 Wis. 2d 1, 816 N.W.2d 177 (citation omitted). Ineffective assistance of counsel is one type of manifest injustice. *Id.*, ¶26. A defendant may also demonstrate a manifest injustice by showing that he or she did not knowingly, voluntarily, and intelligently enter his or her plea. *State v. Brown*, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906.

---

[5] Perfect self-defense is a complete affirmative defense to first-degree intentional homicide and imperfect self-defense is a factor mitigating first-degree intentional homicide to second-degree intentional homicide. *State v. Head*, 2002 WI 99, ¶36, 255 Wis. 2d 194, 648 N.W.2d 413.

## I. Ineffective assistance of counsel

¶19     On appeal, Holtz renews his argument that he should be permitted to withdraw his plea because trial counsel was ineffective in his handling and explanations to Holtz of self-defense, *McMorris* evidence, and lesser-included offenses.  To establish a claim of ineffective assistance, a defendant must prove both:  (1) deficient performance by counsel; and (2) prejudice resulting from that deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  We need not address both elements of the ineffective assistance test if the defendant fails to make a sufficient showing on one of them.  *State v. Dalton*, 2018 WI 85, ¶32, 383 Wis. 2d 147, 914 N.W.2d 120.

¶20     "To demonstrate deficient performance, a defendant must show that counsel's representation fell below an objective standard of reasonableness considering all the circumstances."  *Id.*, ¶34.  "In evaluating counsel's performance, this court is highly deferential to counsel's strategic decisions."  *Id.*, ¶35.  We must make "every effort … to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689.

¶21     "Appellate review of an ineffective assistance of counsel claim is a mixed question of law and fact."  *Dalton*, 383 Wis. 2d 147, ¶33.  "The circuit court's findings of fact will not be disturbed unless they are clearly erroneous."  *Id.*  "However, the ultimate determination of whether the attorney's performance falls below the constitutional minimum is a question of law we review independently of the determinations rendered by the circuit court[.]"  *Id.*

¶22    On appeal, Holtz largely challenges the factual findings made by the circuit court in support of its determination that trial counsel did not perform deficiently. He believes the circuit court should have given more weight and consideration to his affidavit—where he averred trial counsel did not adequately advise him of self-defense, *McMorris* evidence, or lesser-included offenses, instead of trial counsel's testimony that he did explain these things to Holtz and would have filed a *McMorris* motion had the case proceeded to trial.

¶23    However, credibility determinations and the weight given to the evidence is strictly within the province of the factfinder. *See State v. Poellinger*, 153 Wis. 2d 493, 506, 451 N.W.2d 752 (1990) ("It is the function of the trier of fact, and not of an appellate court, to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). Here, the circuit court found trial counsel to be credible and Holtz's affidavit to be self-serving.

¶24    The circuit court also found that trial counsel's testimony was bolstered by other evidence presented at the *Machner* hearing and in the record. This evidence included the plea negotiation email exchanges between trial counsel and the State where they negotiated, with Holtz's approval, an amendment of the first-degree intentional homicide charge to one of the lesser-included offenses. The circuit court also cited a letter from Holtz's cellmate that had been produced in discovery for this case that indicated Holtz did not believe he would be convicted of first-degree intentional homicide and discussed J.R.A.'s violent tendencies. The record reflects that trial counsel hired an investigator to interview a witness about J.R.A.'s violence. Trial counsel also argued self-defense at sentencing.

¶25    Given the record, we see no reason to overturn the circuit court's factual determinations that trial counsel "did, in fact, identify self-defense as an issue, discussed the possibility of amendments with his client, relied on self-defense in plea negotiations, and referred to it at sentencing." *See Poellinger*, 153 Wis. 2d at 507.  The circuit court also found trial counsel discussed the lesser-included offenses with Holtz.  Finally, the circuit court found trial counsel "was aware of *McMorris* evidence, knew that there was a self-defense issue in this case, and would have filed a motion to admit it if the case had gone to trial."  Applying the circuit court factual findings to the legal standard of deficient performance, we agree with the circuit court that trial counsel's performance was not deficient.

¶26    We also reject Holtz's argument that trial counsel was deficient for failing to file a motion to use *McMorris* evidence before Holtz's plea hearing, for failing to check CCAP or make open records requests to learn about J.R.A.'s violent tendencies so counsel could discuss them with Holtz, and for failing to investigate whether Holtz was injured in a bicycle accident[6] approximately one month before killing J.R.A. (which Holtz asserts would further support his self-defense claim).

¶27    As the circuit court observed, a motion to use *McMorris* evidence *at trial* becomes necessary only if the case is proceeding *to trial*.  Trial counsel testified that the case was scheduled to go to a jury trial in late April 2022.  The parties reached a plea agreement in early March 2022, and Holtz pled guilty on

---

[6] At the *Machner* hearing, Holtz testified that approximately one month before killing J.R.A., Holtz was in a bicycle accident and injured himself.  His most significant injuries were sprained ribs and a hurt arm.

11

March 28, 2022. Trial counsel was not deficient for failing to file a motion to use evidence at a case that was not going to proceed to trial.

¶28 Next, *McMorris* permits a defendant in a homicide case, who has a factual basis to argue self-defense, to "establish what the defendant believed to be the turbulent and violent character of the victim by proving prior specific instances of violence *within his knowledge at the time of the incident*." *McMorris v. State*, 58 Wis. 2d 144, 152, 205 N.W.2d 559 (1973) (emphasis added). Trial counsel had no obligation to search for evidence of J.R.A.'s violent tendencies and then ask Holtz whether he knew about them. Rather, as counsel testified, Holtz told him what he knew about J.R.A. and counsel then hired an investigator who went to interview a witness at the jail.

¶29 Although Holtz introduced evidence at the *Machner* hearing to establish additional instances of J.R.A.'s violence, the circuit court found that Holtz "only knew that [J.R.A.] liked to fight" and Holtz did not show "that he actually knew any of the details" of this evidence. The circuit court's factual finding is not clearly erroneous. Additionally, trial counsel testified he investigated everything Holtz asked him to investigate. We agree with the circuit court that trial counsel did not perform deficiently in regard to this evidence.

¶30 As for Holtz's bicycle injury, Holtz acknowledges that he was aware he was injured but argues trial counsel was nevertheless deficient for failing to investigate this injury. He asserts the evidence of his injury "would support the argument that Holtz, in order to defend himself, was at a severe disadvantage" and because of his injuries was less able to defend himself. Again, trial counsel testified that he investigated everything Holtz wanted him to investigate. The circuit court found trial counsel to be credible. In any event, Holtz's argument

does not provide a basis for plea withdrawal because Holtz was certainly aware of the bicycle injury at the time he pled and did not need trial counsel to investigate in order to advise him of that fact. Trial counsel did not perform deficiently.

¶31 Because Holtz failed to demonstrate that his trial counsel performed deficiently, we need not address prejudice. *See **Dalton***, 383 Wis. 2d 147, ¶32. Holtz cannot prove that his trial counsel provided ineffective assistance. We conclude that Holtz failed to demonstrate manifest injustice, and the circuit court properly denied Holtz's motion to withdraw his guilty plea.

## II.  Knowing, voluntary, and intelligent plea

¶32 On appeal, Holtz next argues the circuit court's plea colloquy was deficient because the circuit court "did not inquire as to whether trial counsel discussed possible defenses with Holtz nor did the [c]ourt inquire whether Holtz was aware of the law concerning self-defense, '***McMorris*** evidence', or that Holtz had, through counsel, the ability to request lesser included offenses to be submitted to the jury at trial." He also argues he was unaware of this information.

¶33 In Wisconsin, circuit courts have statutory and case-mandated duties during plea colloquies to ensure that a defendant's plea is knowing, voluntary, and intelligent. ***Brown***, 293 Wis. 2d 594, ¶23. If the circuit court fails to fulfill one of its duties—either court-mandated or under WIS. STAT. § 971.08 (2021-22)[7]—the defendant may move to withdraw his or her plea. ***Brown***, 293 Wis. 2d 594, ¶36. To do so, the defendant must "(1) make a prima facie showing of a violation of []

---

[7] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

§ 971.08(1) or other court-mandated duties by pointing to passages or gaps in the plea hearing transcript; and (2) allege that the defendant did not know or understand the information that should have been provided at the plea hearing." ***Brown***, 293 Wis. 2d 594, ¶39. If the defendant establishes this information, then the burden shifts to the State to prove by clear and convincing evidence that the defendant's plea was knowing, voluntary, and intelligent, despite the identified issue from the plea hearing. ***Id.***, ¶40.

¶34 We reject Holtz's argument that his plea was not knowing, voluntary, or intelligent because the circuit court did not specifically inquire into Holtz's understanding of self-defense, ***McMorris*** evidence, or lesser-included offenses at the plea hearing. As a threshold matter, Holtz cites no statutory or case law imposing these specific requirements on a circuit court during a plea colloquy. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not consider undeveloped legal arguments). As relevant for defenses, the circuit court need only "[a]lert the defendant to the possibility that an attorney may discover defenses or mitigating circumstances that would not be apparent to a layman such as the defendant." ***Brown***, 293 Wis. 2d 594, ¶35. That was fulfilled here when, during the plea colloquy, Holtz stated he understood that he had the right to present evidence at trial and to have witnesses subpoenaed to come to court. Thus, the court's plea colloquy did not have a defect.

¶35 More importantly, even if there were a defect in the colloquy, the circuit court found that Holtz's plea was knowing, voluntary, and intelligent because he was aware of the information that he claims should have been provided at the plea hearing. *See **id.***, ¶40. Specifically, the circuit court found that prior to pleading to the amended charge of first-degree reckless homicide, Holtz and trial counsel discussed the various levels of homicide and self-defense. These findings

14

are supported by the record and therefore not clearly erroneous. *See id.*, ¶19. Holtz's plea was knowingly, voluntarily, and intelligently entered. The circuit court properly denied his motion for plea withdrawal.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.